Brew v. Hastings.

*Partnership—Continuance of firm after death of member—Dissolution.*

Stipulations in articles of copartnership for the continuance of the firm after the death of a member, and until the consent of all the partners is given to a dissolution, are valid and binding, and on the death of an individual partner will prevent a dissolution.

It is not a fraud, actual or constructive, upon creditors for a debtor to enter into a partnership agreement in a banking business for the term of ten years with a stipulation that the death of a member during that period should not work a dissolution, but that his interest should remain in the partnership, his representatives, however, to have no voice or control in the management.

*Partnership—Dissolution—Findings of fact.*

It is error for the court to find as a fact a parol agreement between the surviving partners and representatives of a deceased partner for a dissolution of the partnership, where the evidence discloses merely propositions from both sides for settlement not acceded to by either, and no conclusion reached.

Argued April 16, 1900.    Appeal, No. 249, Jan. T., 1899, by defendants, from decree of C. P. Centre Co., Aug. T., 1898, No. 1, on bill in equity in case of George T. Brew and George L. Jackson, administrators of George W. Jackson, deceased, v. Daniel H. Hastings, J. Henry Cochran and Henry C. McCormick, who survive George W. Jackson, deceased, trading as Jackson, Hastings & Company.    Before GREEN, C. J., MᴄCOLLUM, DEAN, BROWN and MESTREZAT, JJ.    Reversed.

Bill in equity for a dissolution of a partnership, and for an account.

The facts were found by LOVE, P. J., as follows:

The partnership was formed by articles of agreement duly executed by the parties August 31, 1897.    The capital was $50,000, of which Geo. W. Jackson put in the six fifteenths, or $20,000.

George W. Jackson died intestate on or about October 22, 1897.    After his death the surviving partners continued and still continue the business in the firm name of Jackson, Hastings & Company, and employed John P. Harris as cashier

about January 1, 1898. George W. Jackson was the cashier and manager of the bank up until the time of his decease.

The fourth paragraph of the articles of copartnership is as follows, viz:

" In the event of the death of one or more of the partners before the expiration of the term fixed for the duration of this partnership, the capital of the deceased partner or partners shall remain in and be employed in the business until the end of the term for which this partnership is created, unless otherwise agreed between the surviving partners or partner and the legal representatives of the deceased partner or partners, and the survivor or survivors shall have the right to continue the use of the copartnership name.

" The legal representatives of the deceased partner or partners in such case, however, shall be paid six per cent per annum on the capital invested by said partner or partners, and shall also participate from year to year during the term aforesaid in the earnings in the same manner, in the same proportion and to the same extent as the deceased partner himself would have participated under the terms of this agreement, had he continued in full life until the expiration of the term of the partnership hereby fixed. And it is further distinctly agreed that the surviving partner or partners shall have the entire, exclusive and independent management of the business as fully as all the partners now have, with no increased liabilities for mistakes, accidents or errors of judgment, and the legal representatives of any deceased copartner shall at no time have any voice in or power of control over the policy of the management or conduct in said business."

Shortly after the death of Mr. Jackson the officers of the bank called in the administrators, the plaintiffs, and informed them that Mr. Jackson was largely indebted to the bank and that it was of such a character that it should be settled without much publicity, as it would reflect upon the character of Mr. Jackson. The administrators paid $43,000 in December, 1897, on account of the alleged indebtedness without consulting their counsel and without taking refunding receipts. They now claim that they paid $15,000 more than the estate was liable to pay. This the defendants deny and still claim that the estate owes them about $24,000. This the plaintiffs deny.

The status of the financial standing of the estate of George W. Jackson has not yet been determined. It is in dispute and unsettled. The defendants contend that they have the right to appropriate the interests of the estate of G. W. Jackson in the bank to the payment of the alleged indebtedness to the bank, although the same is in dispute and unsettled.

If the alleged claim of the bank is a valid one against the estate and sundry other claims presented to the administrators for payment be sustained, the estate of G. W. Jackson is practically insolvent. From the evidence taken it is prima facie insolvent. While the evidence fails to show any express agreement between the parties that the partnership should be considered as dissolved, yet efforts at settlement between the estate and the partnership were frequently made and were based upon the idea of its being dissolved.

The evidence of Mr. Hewes is pretty clear upon this question. And Mr. H. C. McCormick, who is one of the surviving partners, the attorney for the bank, and in the effort to settle the matter wrote Mr. Hewes, attorney for the estate, June 3, 1898, as follows : " So far as the dissolution is concerned, that came about by the death of Mr. Jackson." The evidence shows he was representing the interests of the surviving partners in these negotiations and that they considered the partnership dissolved.

The preliminary questions to be determined from the foregoing facts is as to whether a dissolution of the partnership should be decreed, and that the bank should be decreed to account to the estate of Geo. W. Jackson, deceased.

The defendants contend that under the terms of the articles of copartnership there can be no decree of dissolution, as it provides for the continuance of the partnership for ten years from September 1, 1897, and that the death of a partner should not work a dissolution. The fourth paragraph of the articles of copartnership, while it provides that in case of the death of a partner his share of the capital shall remain in the partnership during the term unless otherwise agreed upon by the surviving partners and the legal representatives of such deceased partner, yet it also provides that the legal representatives of the deceased partner shall be paid six per cent per annum on the capital invested in the partnership by such partner, and in addition thereto, that they shall participate in the earnings of the partnership.

If the estate of Geo. W. Jackson was perfectly solvent and no one was interested but his legal representatives and heirs in his estate and the agreement could be fairly carried out, then, unless other good ground be shown, we would be disposed to hold that the covenant is binding and a dissolution should not be decreed. But the estate being practically insolvent and the bank being the largest creditor of the estate, and the defendants do not propose to pay over to the legal representatives of George W. Jackson, deceased, the six per cent per annum upon the capital invested by him, or to pay over in addition thereto the earnings of the partnership, nor have they offered to do so. We fail to see how they can insist upon the enforcement of the covenant as against the estate of George W. Jackson, and they fail and refuse to perform their part of the same covenant.

But they contend that they have the right to apply or appropriate the interest of the estate in the partnership, to the payment of the alleged indebtedness of Geo. W. Jackson, deceased, to the partnership. As we have found, the question of that indebtedness has not been settled or adjudicated. It is yet in dispute.

We do not think, therefore, that the bank can so appropriate the assets of the estate. We fail to see what right they have to make a distribution of the decedent's estate in this way.

They have no preferred claim or superior right to that of other creditors of said decedent.

Then, while it may be conceded that a man who is solvent may invest his capital in a business and covenant that it may remain for a definite time, even after his decease, and be subject to the vicissitudes and uncertainties of such business, yet, when it turns out upon his death that he is insolvent, we do not think he can so tie up his estate as to prevent his creditors from realizing out of the same. Insolvency of a partner may work the dissolution of a partnership. To hold, as contended for by the defendants, that no dissolution could be decreed, and settlement of the interest of the estate in the partnership until the close of the term fixed when the assets of the estate therein are necessary for the payment of the debts of the decedent, would delay the settlement of the estate, and if the business should prove unprofitable, the estate might prove worthless.

If a man could tie up his estate in a business in that way for

ten years. he could tie it up for fifty years as well, and his creditors be practically remediless. In other words, a man might practically put his property entirely out of the reach of his creditors by investing it in a partnership business for a long term and provide it shall continue therein until the end of the term. We do not think the position assumed by the defendants is tenable or sound in law.

We think, therefore, the creditors of the estate of the decedent, represented by the administrators thereof, have a right to know the exact value of the decedent's interest in the said partnership, as an asset of the estate, and if the assets thereof are necessary for the payment of the debts of the estate, and it is evident they are as the defendants desire to apply it to the payment of their claim, they are entitled to have a decree of dissolution and the assets marshaled for the purpose of settling the decedent's estate.

If the claim of the bank against the estate be legally established and the interest of the estate in the partnership be definitely ascertained and adjudicated, then as to the extent the one may be set off against the other can be determined and may depend upon the extent of the insolvency or solvency of the estate of the decedent, and the rights and equities of the parties as to that question can be determined later. We are, therefore, of opinion that the plaintiffs are entitled to a decree of dissolution and that an account be rendered.

### DECREE.

This cause came on to be heard at this term and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz :

1. That the partnership formed by the articles of copartnership, dated August 31, 1897, between Geo. W. Jackson, D. H. Hastings, H. C. McCormick and J. Henry Cochran, under the firm name of Jackson, Hastings & Company, be and is hereby dissolved.

2. That the defendants account with the plaintiffs for the interest of. Geo. W. Jackson, deceased, in said partnership of Jackson, Hastings & Company, and that the plaintiffs be permitted to have full access to the books, accounts and papers of said partnership involving such accounting and settlement.

3. If the parties fail to arrive at a satisfactory accounting or settlement within sixty days from the filing of this decree we will appoint an expert to examine the books and accounts of said partnership, as assistant to the court, as provided in the amendment to the equity rules adopted in 1894.

*Error assigned* was the decree of the court.

*Henry C. McCormick*, with him *Reeder & Quigley*, for appellants.—A partnership may be continued by agreement of the parties after the death of a member: Wilcox v. Derickson, 168 Pa. 335; Evans v. Watts, 192 Pa. 115; Gratz v. Bayard, 11 S. & R. 41; Laughlin v. Lorenz, 48 Pa. 275; Leaf's App., 105 Pa. 505; Burwell v. Cawood, 2 Howard, 576; First Nat. Bank of Allegheny v. Farmers' Deposit Nat. Bank, 5 Cent. Repr. 505; Huber v. Wood, 14 Pa. C. C. R. 13; Lindley on Partnership, *606; Stewart v. Robinson, 115 N. Y. 328; Butcher v. Hepworth, 115 N. Y. 328.

*John M. Dale* and *Charles P. Hewes*, for appellees.—A partnership by articles for a definite period may be dissolved by either partner before the termination of the period: Mason v. Connell, 1 Wharton, 380; Slemmer's App., 58 Pa. 168.

A provision to continue the partnership after the death of the partner is void: Laney v. Laney, 6 Dem. (N. Y.) 241.

The administrators are entitled to a settlement of the accounts of the bank as of the date of Jackson's death, and in addition yearly settlements to determine the amounts of the profits coming to the estate: Hudson v. Barrett, 1 Parsons's Eq. 141; Book v. O'Neil, 2 Pa. Superior Ct. 306; Chipman v. Ninth Nat. Bank, 120 Pa. 86; Marks's App., 85 Pa. 231; Jordan v. Sharlock, 84 Pa. 366; Hicks v. Nat. Bank, 168 Pa. 638.

OPINION BY MR. JUSTICE DEAN, May 14, 1900:

George W. Jackson and defendants, by written agreement, on September 1, 1897, formed a copartnership in the banking business at Bellefonte, Centre County, Pa. On October 22, of the same year, Jackson died. On August 10, 1898, his administrators filed this bill, praying, (1) for a decree of dissolu-

tion; (2) for an account; (3) for a receiver. The defendants denied the right to a decree in plaintiffs' favor on any one of the prayers, averring that the agreement stipulated for the continuance of the partnership for the term of ten years from its date, and that the death of a member during that period should not work a dissolution, but that his interest should remain in the partnership, his representatives, however, to have no voice or control in the management; his estate, nevertheless, to receive six per cent on the amount of capital invested by him, and further, to receive such share of the earnings as the deceased would have been entitled to had he lived. It was further averred that while negotiations looking to a closing out of the entire interest of Jackson had been opened between the parties after his death, they were still pending when the bill was filed, and they, therefore, rested for defense on the written agreement. Evidence was taken on motion for preliminary decree, as to whether there had been as a fact, a parol agreement between plaintiffs and defendants for a dissolution, and as to whether the deceased partner at his death was insolvent. The court below does not find, positively, that there was a parol dissolution of the partnership after the death of Jackson, but says defendants considered it dissolved. Further, it found, that Jackson, at his death, was practically insolvent, and in substance, held, as a matter of law, that an insolvent member of a partnership could not tie up his estate or part of it by a partnership agreement of this nature so as to protect it from possession for purposes of administration by his legal representatives; that such agreement was, in effect, a fraud upon creditors. It was, therefore, decreed, that the partnership be dissolved; that defendants' account, and that plaintiffs have full access to the books, accounts and papers of the partnership. Further, that if the parties failed to arrive at a satisfactory accounting and settlement within sixty days, that then an expert accountant would be appointed by the court as an assistant to the court.

From this decree, it necessarily followed, that if defendants did not submit, a receiver would have to be appointed to enforce it, which was the alternative prayer of the bill.

We now have this appeal by defendants, who assign for error the action of the court.

As to the fact found by the court, that there was, by parol, an agreement for a dissolution of the partnership, there is no evidence worthy the name to sustain the finding. There were propositions from both sides for settlement, not acceded to by either, and no conclusion reached; this is so manifest that it would be a waste of time to narrate the evidence bearing upon the question. Necessarily, the partnership was dissolved, as concerned any further personal participation in the control or management by Jackson, and the agreement positively stipulated, that in that event, his representatives were to be excluded during the term. The plaintiffs in their negotiations sought a settlement for his interest immediately; defendants were not averse to such settlement, but they were wide apart as to the amount to be paid for the interest of the deceased partner; on this, their minds never met. The averments of the bill, especially the ninth and tenth paragraphs show such was the view of plaintiffs.

As to the fact, that the estate of Jackson is insolvent, and therefore such an agreement was a fraud upon his creditors, the reasoning of the learned judge is singularly inconclusive. Admit as a fact, which is at least doubtful, that Jackson, at the date of the agreement, when he bound himself as the other three partners did, was insolvent, there is no averment that the others had knowledge of such fact, or that there was any fraud or collusion between them. Why, then, even if Jackson intended to tie up this part of his estate in a perfectly fair and business-like agreement, should they suffer? But is it a fraud, actual or constructive, upon creditors, for a debtor to enter into a partnership agreement in a legitimate business, with a prospect of gain, for a term of years? The extent, value and place of the investment can be known with proximate certainty by all creditors. Nothing is concealed. The investment of capital in a copartnership in the banking business was as open as a loan secured by mortgage of record payable in ten years, or the lease of a farm to a tenant for the same period. It in no proper sense put the investment out of the reach of creditors; at most, it only modified or changed the form of remedy to reach it. The learned judge of the court below has cited no authority in support of his view; we are confident there are none. All our cases are directly to the contrary. "Stipula-

tions in articles of copartnership for the continuance of the firm after the death of a member and until the consent of all the partners is given to a dissolution, are valid and binding, and on the death of an individual partner will prevent a dissolution:" Leaf's Appeal, 105 Pa. 505. This quotation is but a summary of the law as laid down by this court seventy-five years ago in Gratz v. Bayard, 11 S. & R. 41, and followed ever since, the last case being Wilcox v. Derickson, 168 Pa. 335. All the text writers, Story on Partnership, Teller on Executors, Collyer on Partnerships and Williams on Executors, state the law to be substantially as quoted. The decree does not rest on either reason or authority. If it were carried to its probable result, the court would take possession of the bank through its own officer, as receiver, and wind up its affairs in the interest of creditors. This business courts generally seek to avoid. In the interests of the public, sometimes they take possession of carrying corporations and in rare cases of business partnerships, but only with great reluctance. There is no reason why, even in a doubtful case, they should dissolve a perfectly solvent banking partnership in the interest of importunate creditors or complaining representatives of a deceased member, in the face of an express stipulation by all the partners to the contrary. As both parties have treated this as a final hearing, the decree is reversed, and the bill is dismissed at costs of appellee.