BREW v. COCHRAN et al.

(Circuit Court, M. D. Pennsylvania. November 11, 1905.)

No. 11.

1. PARTNERSHIP—SUIT FOR SETTLEMENT AGAINST SURVIVING PARTNER—PARTIES.

   To a suit in equity by the personal respresentative of a deceased partner against a sole surviving partner, to whom also all the assets of the partnership have been transferred as trustee under an agreement between all parties in interest, to obtain a final settlement of the partnership affairs, the personal representatives of other deceased partners are indispensable parties.

2. SAME—RIGHT TO MAINTAIN SUIT FOR SETTLEMENT.

   All but one of the members of a banking partnership died before the time fixed for its termination. The articles provided that on the death of any partner his capital should remain in the firm until that time, and should share in the profits unless otherwise mutually agreed. For some time the surviving partner carried on the business, and then by agreement of all parties in interest the business and the greater part of the assets of the firm were transferred to a corporation in exchange for its stock, which was placed in the hands of the surviving partner as trustee. *Held*, that the personal representative of one of the partners, who had been dead eight years, and upon whose share no profits had been paid, because his right was disputed, was entitled to maintain a suit in equity for a settlement and accounting without waiting until the remnant of the partnership had been fully closed up; it being within the power of the court to protect the interests of all concerned in the final decree.

In Equity. On demurrer to bill.

Charles P. Hewes, for plaintiff.
Seth T. McCormick, for demurrer.

ARCHBALD, District Judge.   The plaintiff's intestate, George W. Jackson, was a member of the copartnership of Jackson, Hastings & Co., organized August 31, 1897, to engage in the general banking business at Bellefonte, Pa.   Two months later, on October 22, he died; and Henry C. McCormick and Daniel H. Hastings two other members have also died since then, the one in May, 1902, and the other in January, 1903, leaving J. Henry Cochran as the sole survivor.   As recited in the copartnership agreement, Jackson had a six-fifteenths interest in the business, Hastings had five-fifteenths, McCormick two-fifteenths, and Cochran two-fifteenths.   By the second article, the copartnership was to continue 10 years; and by the fourth article, it was provided, that, in case of the death of one or more of the partners before the expiration of that term, the capital of such partner or partners should remain in the business, unless otherwise agreed to, but that the legal representatives of any such partner should be paid 6 per cent. per annum on the capital so left in it, and should also participate in the earnings to the same extent as the deceased partner himself would have done if living; the business, however, to be exclusively managed by the surviving partners or partner, and the legal representatives of the deceased partners to have no voice therein.   In accordance with what was so provided, the business of the partnership continued, notwithstanding the death of its several members, up to January last, and twice in this interval the plaintiff by suit in the state courts has endeavored to obtain a recognition of the interest of the estate which he represents in its affairs, and a participation in the profits derived therefrom, as secured to him by the articles quoted.   But in each case, without avail; it being held that, by reason of the ten-years provision, the suit was premature.   Brew v. Hastings, 196 Pa. 222, 46 Atl. 257; Id., 206 Pa. 155, 55 Atl. 922.   Now, again, the same position is taken, but for somewhat different reasons, the facts having changed, and the question is whether the plaintiff is still in advance of his rights.

After the death of the other two partners and the final disposition of the second suit, the parties to the present bill, consisting of the surviving partner and the legal representatives of the three who are deceased, came together, December 24, 1903, and entered into a new agreement. By it (article 1) the provision for the continuance of the copartnership, contained in the original articles, was abrogated, the same being thereby terminated, as it is said, by mutual consent.   Recognizing the desirability of the partnership being merged into a trust company to be organized under the laws of Pennsylvania, it was further agreed (article 2) that, as soon as such trust company should be incorporated, all the assets and property of the firm should be transferred and conveyed to it, and capital stock therein be received in return, to the extent of the net value of the property turned over less the liabilities assumed; such value to be determined (article 3) by agreement between the parties and a committee of stockholders; and the stock (article 4) to be issued to and held by the defendant J. Henry Cochran as trustee for all parties, until their rights should be determined and a distribution of the stock made.   It was, however, further provided (article 5) that immediately upon the formation of the trust company, and the issue and delivery of the stock, any of the parties in interest should be entitled to require a distribution of it,

and a settlement of the affairs of the copartnership, the same as though Mr. Cochran was the sole surviving member without any provision (such as had previously existed) for the continuance of the business; for which purpose, suits at law or in equity, if necessary to compel a settlement and distribution, could be maintained. Nothing in the agreement, however, as it was declared (article 6), should be construed into an admission that the estate of the plaintiff's intestate had any interest in the assets of the copartnership, which the others expressly denied, the sole purpose of the agreement—as it is stated—being to substitute the trust company stock for the existing partnership assets, with the right to an immediate accounting instead of waiting until the end of the 10 years. It was also, at the same time, provided (article 7) that the agreement was only to be operative upon the organization of the proposed trust company, and that it was to be deemed canceled unless this was accomplished and a sale of the assets effected within four months.

The proposed trust company was subsequently organized, although not within the time contemplated, and only a part of the assets were accepted, necessitating another agreement, which was entered into January 2, 1905, between the trust company and the present parties. By it the latter agreed to sell and transfer to the trust company all the property and effects of the copartnership, excepting; (a) notes, accounts, and indebtedness, due thereto by plaintiff's intestate; (b) notes made or endorsed by Henry Green, amounting to $20,000, with the collateral deposited therewith as security; and (c) two certain notes aggregating about $4,400, one made by the Aultman Company, and the other by the Western Manufacturing & Supply Company and indorsed by the Aultman company; all of which were to remain the property of the copartnership. In consideration of this, the trust company agreed to assume all the liabilities of the bank as shown by the books, and to issue at once to J. Henry Cochran, trustee, as provided in the agreement of December 24, 1903, $70,000 of fully paid up stock. It was still further agreed that the firm of Jackson, Hastings & Co. should indorse certain notes (presumably part of the accepted assets); one made by J. W. Gephart for $6,000, due February 1, 1905, and indorsed by F. H. Clemson, and another by the same maker for $5,000, due February 10, 1905, and indorsed by the Bellefonte Furnace Company, and should also guaranty payment of a certain note, made by W. R. Jenkins for $3,000, indorsed by the Jenkins Iron & Steel Company, and secured by a bond of the Howard Iron & Steel Company; the indorsement of these notes or any renewals not to continue longer than a year from the date of the agreement. The several matters which were so provided for were all carried out, and it is to secure the share due to the estate which he represents, in what has been so realized, that the plaintiff brings this suit.

As already stated the principal objection made to it is that it is premature. The further objection that it should be against Mr. Cochran alone, as sole surviving member of the original copartnership, as well as the trustee to whom the stock of the trust company has been issued, is readily disposed of. As already appears, the other defendants are the personal representatives of the two other deceased members, and while the plaintiff may not be entitled to the same measure of relief against

them as against Mr. Cochran as parties directly interested, they are indispensable to any suit which attempts to pass upon and settle the interest of the plaintiff's intestate in the affairs of the partnership, involving as it does an adjustment of the equities between him and his former partners. 1 Dan. Chanc. Prac. 216.

The objection that the suit is brought too soon resolves itself into the argument that an accounting cannot be required until there can be substantially a complete one; and cannot therefore be demanded here, there being outstanding and unsettled matters, such as the several notes which the trust company declined to take, or which it required the firm to indorse or guaranty. The bill was filed April 7, 1905, some three months after the agreement with the trust company, and the large body of stock thereby called for, had admittedly been issued to Mr. Cochran at that time. And while it is not averred that the excepted assets, or the notes, which the firm was required to guaranty, have been realized upon, and the possibility of the latter remaining open for a year is apparently contemplated, it is also a possibility that they have in fact long since been taken care of, or, if not, have been found practically worthless, the plaintiff in either case being entitled to an account. There is certainly a strong appeal for it under the showing that has been made. The plaintiff's intestate has now been dead over eight years, and the settlement of his estate has been necessarily held up until it could be known, whether anything was coming to it from this source. The defendants deny that he had any interest in the partnership (although the original articles recite that he had six-fifteenths); whatever he had being exhausted—as it is claimed—by his indebtedness to the firm. If it should prove that he had none, the controversy, which has been dragging its slow length along all these years, will be brought to an end, to the relief, as it would seem, of all parties. But if, on the other hand, it should be found that he had, his estate, to that extent, with no apparent reason, has been kept out of the interest due it yearly on the capital left with the firm, as well as its proportionate share of the profits, both of which were stipulated and provided for by the original articles.

Finally, by the arrangement with the trust company, the available assets of the firm, constituting by far the greater bulk of them, were disposed of, and stock in that institution secured therefor, which is capable of division among the parties, according to their respective interests, and which they are therefore entitled to have distributed, without more. Denver v. Roane, 99 U. S. 355, 25 L. Ed. 476. Moreover, by the express provision of article 5 of the agreement of December, 1903, either party was to have the right to call for this, as well as for a settlement of the unsettled affairs of the copartnership, and to enforce it by suit at law or in equity; which, of itself, is a sufficient warrant for this bill. It is contended that this was constructively abrogated by the subsequent agreement of January 2, 1905, by which the inability of the parties to fully dispose of the property of the firm, as previously contemplated, is recognized, the unaccepted assets being thrown back on their hands, and others required to be guarantied, leaving the partnership affairs correspondingly open and unliquidated. But the agreement of January 2, 1905, was intended to carry out that of December 24, 1903,

. which, although limited by its own terms, it expressly declares to be in force; and, if so, the plaintiff has a right to appeal to it. Outside of its provisions the defendants would admittedly be liable to account after a substantial liquidation, and much more would they in the face of them. And unless therefore it is clear that something material is to be obtained out of the doubtful and discredited assets which remain, it would be a hardship on those who are interested in the estate, which the plaintiff represents, to longer wait upon them. If occasion should be found in the course of the accounting for protecting the defendants, or either of them, against indorsements or obligations assumed in accordance with the agreement of January 2, 1905, there is no difficulty in providing for it in the final decree, and it affords no ground for not proceeding thereto.

The demurrer is overruled, with leave to the defendants to answer over within 10 days.