### GILBERT v. FONTAINE et al.

Circuit Court of Appeals, Eighth Circuit.
October 26, 1927.

No. 7803.

**1. Appeal and error ⊚⟿919—Equity ⊚⟿363— Allegations in bill must be deemed true on motions to dismiss bill and appeal from decree granting motions.**

On motions to dismiss bill in equity, as not disclosing right to equitable relief, and on appeal from decree granting the motions, allegations of facts in bill must be taken as true.

**2. Mines and minerals ⊚⟿97—Mining partnerships may exist in Kansas to develop oil and gas properties.**

In Kansas, mining partnerships may exist in the development of oil and gas properties.

3. Mines and minerals ⊚⇒97, 99(2)—Contract for sharing expenses and profits in developing oil and gas lease held to create a "mining partnership," with right to lien for advances.

Contract to develop mining lease, providing that parties of second part should develop the property, that expenses and profits should be shared equally by them and parties of first part, with necessarily implied agreement to share losses, that permanent equipment should be owned in common, that contract for operation of the lease should extend to heirs, executors, administrators, and assigns of the parties, *held* to create a "mining partnership" between plaintiff, who was receiver of assignee of parties of second part, and parties of first part, entitling plaintiff to lien for advances for expenses on interest of F., one of parties of first part.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mining Partnership.]

4. Partnership ⊚⇒108—Final accounting and settlement is not prerequisite to action at law between partners for violation of partnership agreement.

The general rule that an action at law involving partnership transactions cannot be maintained between partners until after an accounting and settlement of partnership affairs is not universal, even in ordinary partnerships, and where a partner violates express stipulation in partnership articles, an action at law lies.

5. Mines and minerals ⊚⇒99(2)—Receiver of assignee of mining partner held entitled to sue in equity to establish and foreclose equitable lien for advances, remedy at law being inadequate.

Since mining partnerships are not dissolved by bankruptcy, death, or transfer of a partner's interest, and the delectus personæ being absent, rules respecting actions between mining partners are more liberal than in ordinary commercial partnerships, and so, where partnership agreement provided for periodical settlements, ancillary receiver of assignee of mining partner was entitled to sue in equity to establish and foreclose lien for advances, without praying for a final accounting or dissolution of the partnership; remedy at law not being adequate, since equitable lien could not be established and foreclosed, nor could priority of liens be determined in such action.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by N. T. Gilbert, as ancillary receiver for the Turman Oil Company against M. M. Fontaine and others. Decree for defendants, and plaintiff appeals. Reversed and remanded.

Edward P. Marshall, of Tulsa, Okl. (C. E. Cooper and Bird McGuire, both of Tulsa, Okl., on the brief), for appellant.

L. P. Brooks, of Wichita, Kan., for appellees.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is an appeal from a decree dismissing a bill on motion, upon the ground that it disclosed no right to equitable relief.

The suit was brought by appellant and another, since deceased, against the three appellees, M. M. Fontaine, Kansas City Refining Company, Sinclair Crude Oil Purchasing Company, and a fourth defendant Commercial National Bank of Independence, Kan. The purpose of the suit was to recover a judgment against the defendant Fontaine; to establish an equitable lien for the amount of the judgment upon the interest of Fontaine in a certain oil and gas lease and the products thereof, in which property two of the other defendants were alleged to claim an interest; and to foreclose the lien. The Commercial National Bank disclaimed any interest in the property. The other three defendants moved to dismiss the bill for want of equity. The court indicated that the bill disclosed a cause of action at law against defendant Fontaine, and offered to transfer the cause as to Fontaine to the law side of the court. Plaintiff refused to acquiesce in such a course. The bill was accordingly dismissed as to all three of the defendants.

The vital question on this appeal is whether the bill disclosed any right in plaintiff to equitable relief.

Omitting formal allegations, the bill alleges that on February 12, 1921, Fontaine and others as assignors transferred to Rogers, Nye, and Bittler an undivided $288/768$ interest in and to an oil and gas lease covering southwest quarter (S. W. ¼) of the northwest quarter (N. W. ¼) of section 16, township 26, range 8, Butler county, Kansas, and also executed with Rogers, Nye, and Bittler a contract for the development of the lease; that pursuant to the contract Rogers, Nye, and Bittler entered upon the leased premises and drilled wells thereon productive of oil and gas; that said wells are still producing in considerable quantities; that on October 26, 1921, Rogers, Nye, and Bittler assigned and conveyed their interest in the lease to the Oliphant Petroleum Company, which company in turn on June 1, 1922, assigned and conveyed the said interest in the lease to the Turman Oil Company; that the lease, the assignments, and the contract were duly recorded; that said Turman Oil Company is now the owner of said interest in the lease; that pursuant to the assignments of said in-

terest in the lease, and by virtue of said contract for the development of the lease, the Turman Oil Company succeeded to the rights, duties, and obligations of a co-owner or mining partner in charge of operations for oil and gas upon the leased premises; that plaintiff and another (now deceased) were on the 9th of September, 1924, duly appointed ancillary receivers of the Turman Oil Company by the United States District Court for the District of Kansas, with the usual powers; that, since their appointment, said receivers by authority of said court have been in charge and have been conducting the work of operating the wells upon the leased premises; that defendant Fontaine is the owner of an undivided $\frac{13}{64}$ interest in the lease, and by virtue of the said contract of February 12, 1921, became liable to pay $\frac{13}{64}$ of the expense and cost of operating the lease and the wells on the leased premises for oil and gas; that, prior to the time of the appointment of the receivers, Fontaine had become indebted to said Turman Oil Company in the sum of $2,310.10, for her proportionate share of said expenses incurred in operating said lease, and since the appointment of the receivers Fontaine has become indebted to them in the further sum of $709.99 on account of expenses in operating said lease, no part of which sums has been paid; that the Turman Oil Company and the receiver are mining partners with Fontaine in the matter of the operation of said lease; that Fontaine has been receiving from the defendant Sinclair Crude Oil Purchasing Company, which is running the oil produced from the lease for the account of Fontaine, her proportionate share of the sale price of the oil produced from the lease; that Fontaine has appropriated said proceeds without paying her proportionate share of said expenses; that plaintiff as receiver of the Turman Oil Company has an equitable lien upon the interest of Fontaine in said lease to secure the payment of said indebtedness, and that the lien should be impressed also upon the oil produced and the proceeds from the sale thereof; that defendants, other than Fontaine and Sinclair Crude Oil Purchasing Company, and each of them, claim some lien, interest, or mortgage right in and to the interest of Fontaine in said lease; that the lien of plaintiff is superior to each and all said liens of defendants.

The contract of February 12, 1921, is attached to the complaint and made a part thereof. This contract recites that the first parties (Fontaine and others) have an ownership in the oil and gas lease described in the complaint. The lease and the contract both cover an additional forty-acre tract not here involved. The contract provides: "* * * First parties are desirous of securing the development of said premises for oil and gas, and said second parties [Rogers, Nye, and Bittler], agree to develop the same on the terms and conditions hereinafter set forth." It further provides:

"The said second parties agree at their own expense and in proper manner to drill, shoot, and thoroughly clean out, and furnish necessary tankage for and fully equip and put on the pump seven (7) wells on said above described premises, said wells to be drilled five (5) upon the south forty acres and two (2) upon the north forty acres of said premises, and to be completed within one (1) year from the date hereof and to be drilled to a depth of twenty-eight hundred (2,800) feet, unless oil in paying quantities is found at a lesser depth. Also, it is agreed that said parties of the second part are to have charge of operations and shall protect the lines of said premises at all times by drilling proper offset wells.

"And the expense of the maintenance, operating and pumping of the said seven (7) oil wells from the time they are put on the pump and of the drilling, equipping and operating of any further wells on said premises drilled by said second parties under this contract shall be paid one-half (½) by parties of the first part and one-half (½) by parties of the second part. The said second parties shall render monthy installments of all such costs and expenses to said parties of the first part and said parties of the first part shall thereupon within fifteen (15) days thereafter remit their proportionate share of such expenses to parties of the second part, and each of the first parties shall be liable only for their proportionate part of said expense. * * * That said parties of the first part and said parties of the second part shall own the undivided interest in all permanent equipment in proportion to their respective interests. * * *

"It is agreed and understood by and between the parties hereto that if second parties shall discover gas in paying quantities in any wells they shall properly case off and shut in said gas and make proper connections to use same, and said gas so discovered shall belong to the parties hereto in the same proportion as the oil; that is to say, first parties shall be the owners of the one-half (½) part thereof and second parties shall be the owners of the remaining one-half (½) part thereof after first delivery and the $\frac{1}{8}$ to the fee title owner under the terms of his said lease,

and that said gas so discovered shall be used for operating said lease; and if same, or any part thereof, is sold off the premises, the proceeds of such sale, or sales, shall be divided equally among the parties hereto according to their respective interests. * * *

"In consideration of covenants and agreements to be kept and performed by second parties as above set forth, first parties agree to transfer to second parties by proper division orders the full one-half of the oil and gas produced from the seven-eighths (⅞) of working interest in the oil and gas lease above described; said division order to be signed immediately upon completion of first well. This agreement extends to the heirs, executors, administrators, and assigns of parties hereto."

[1] The foregoing are the salient facts appearing in the bill. Upon the motions to dismiss and upon this appeal they must be taken to be true. Do they disclose any right to equitable relief on behalf of plaintiff? The answer to this question depends primarily upon the answer to a second question, viz.: Do the facts show the existence of a mining partnership between plaintiff and defendant Fontaine? The plaintiff contends for an affirmative answer; the defendants for a negative.

In 40 C. J. p. 1143 et seq., it is stated: "A mining partnership has been said not to be a true partnership, but rather a cross between a tenancy in common and a partnership proper, partaking in part of the nature of each." "No express declaration of partnership is essential to the establishment of partnership rights, where the intention of the parties may be gathered from the surrounding circumstances and their conduct with reference thereto." "A partnership may be formed to work mines owned or leased by any or all of the individual members, but the parties must be associated together in the ownership or possession of the property in some manner; and although an equitable interest is sufficient, there must be an interest in the property or a right to possession in the right of the partnership as distinguished from that of the owner, and a mere license or contract of employment is not a sufficient interest in the mine to support a mining partnership."

Lindley on Mines (3d Ed.) states:

Section 796. "Where several owners unite and co-operate in working a mine, they form what is termed a mining partnership, which is governed by many of the rules relating to an ordinary partnership, and also by some rules peculiar to itself. The distinctive features of mining partnerships are: (1) The absence of the delectus personæ, which characterizes ordinary partnerships. (2) Neither death nor bankruptcy of one of the members dissolves it. (3) A sale of an interest in a mining partnership by a partner does not dissolve the partnership; such stranger by his purchase becomes a partner. Hence its membership is changeable and uncertain."

Section 797. "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same."

Section 798. "Such a partnership may exist as well where the parties have an interest in the working of the mine in carrying on mining operations as where they own the mine itself."

In Kahn v. Smelting Co., 102 U. S. 641, 26 L. Ed. 266, Mr. Justice Field quotes with approval from Skillman v. Lachman, 23 Cal. 203, 83 Am. Dec. 96, as follows: " 'Whatever may be the rights and liabilities of tenants in common of a mine not being worked, it is clear that where the several owners unite and co-operate in working the mine, then a new relation exists between them; and, to a certain extent, they are governed by the rules relating to partnerships. They form what is termed a mining partnership, which is governed by many of the rules relating to ordinary partnerships, but also by somes rules peculiar to itself, one of which is that one person may convey his interest in the mine and business without dissolving the partnership.' "

He then adds: "The same doctrine is asserted in numerous other cases, not only in that court, but in the courts of England. Associations for working mines are generally composed of a greater number of persons than ordinary trading partnerships; and it was early seen that the continuous working of a mine, which is essential to its successful development, would be impossible, or at least attended with great difficulties, if an association was to be dissolved by the death or bankruptcy of one of its members, or the assignment of his interest. A different rule from that which governs the relations of members of a trading partnership to each other was, therefore, recognized as applicable to the relations to each other of members of a mining association. The delectus personæ, which is essential to constitute an ordinary partnership, has no place in these mining associations."

This statement of the law was approved in Bissell v. Foss, 114 U. S. 252, 5 S. Ct. 851,

29 L. Ed. 126; Kimberly v. Arms, 129 U. S. 512, 530, 9 S. Ct. 355, 32 L. Ed. 764.

This court in Loy v. Alston, 172 F. 90, speaking by Circuit Judge Sanborn, announced the same principles in the following language: "A mining partnership differs in some respects from the ordinary commercial partnership. It may be formed, continued, and dissolved in either of two methods: (1) By the usual partnership agreement; or (2) by the joint ownership of undivided parts in a mine or lease, and by the operation of a mine or lease by some of the joint owners with the consent or acquiescence of the other joint owners. A commercial partnership is dissolved when one of the partners disposes of his interest, but a mining partnership, which results from the operation of a mine by some of the joint owners with the consent of the others, is not dissolved by the conveyance by one of these owners of his interest in the mine or the lease to a stranger; but the grantor then ceases to be a member of the copartnership, and the stranger becomes a partner in his place. The delectus personæ which is an essential element of an ordinary partnership is not an indispensable attribute of a mining partnership."

In Sturm v. Ulrich, 10 F.(2d) 9, this court, speaking by Judge Stone, said: "The relationship between parties engaged in the common ownership and operation of mining property is somewhat sui generis. Where there is merely a common ownership and no joint development, the relation is, ordinarily, a tenancy in common. Where they join their efforts or means or property in the development of mining property they constitute a 'mining partnership.' The use of the term 'partnership' in this connection is by analogy and is not to be taken as meaning, in all legal respects, the same as an ordinary business or trading partnership. Such a partnership has many of the attributes and limitations of an ordinary partnership but not all such. There are some cardinal differences. Probably, the main differences are that the death or bankruptcy of one such partner does not terminate the partnership and that one partner may convey his interest, or any part thereof, without the consent of his associates and without terminating the partnership and the transferee thereof becomes a partner, to the extent of the interest transferred, from the effective date thereof. Mining partnerships are held, generally, to be applicable to development of oil and gas properties. * * * Such a partnership may result from express contract or be implied by the conduct of the parties in joining in mining operation on a profit and loss sharing basis or in jointly acquiring mining property for the purpose of joint development and afterwards prosecuting such development or where persons owning a mine engage in working it for the purpose of extracting the minerals."

See, also, Thompson v. Crystal Springs Bank (C. C. A. 8) 21 F.(2d) 602, a case recognizing the same principles, but holding that the facts did not fulfill the tests of a mining partnership.

[2] In Kansas, where the cause of action in the case at bar arose, mining partnerships are recognized. Huston v. Cox, 103 Kan. 73, 172 P. 992; Snider v. Davidson, 105 Kan. 661, 185 P. 724. In the Huston Case, the court said: "Mining partnerships are indulged between co-owners only when they actually engage in working the property. Before actual operations begin, and after actual operations cease, they are simply cotenants, unless, of course, an ordinary partnership has been formed."

For typical cases in other jurisdictions, see Barrett v. Buchanan, 95 Okl. 262, 213 P. 734; Kennedy v. Beets Oil Co., 105 Okl. 1, 231 P. 508; Settembre v. Putnam, 30 Cal. 490; Manville v. Parks, 7 Colo. 128, 2 P. 212; Bentley v. Brossard, 33 Utah, 396, 94 P. 736; Childers v. Neely, 47 W. Va. 70, 34 S. E. 828, 49 L. R. A. 468, 81 Am. St. Rep. 777. See, also, cases collected in footnote in Sturm v. Ulrich, supra.

In several of the states statutory provisions exist relative to mining partnerships, but such provisions are in general merely declaratory of the principles already established by decisions of the courts.

[3] Turning to the case as bar, it is found that the bill discloses: (1) A mining property; (2) a community of interest by plaintiff and Fontaine in the mining property; (3) a community of action by plaintiff and Fontaine in the development of the mining property; (4) an express agreement for the sharing of profits; (5) an express agreement for the sharing of expenses; (6) a necessarily implied agreement for the sharing of losses; (7) an express agreement for the ownership in common of the permanent equipment placed upon the premises; (8) an express agreement that the contract for the operation of the lease shall extend to the heirs, executors, administrators, and assigns of the parties thereto. By this last provision, the delectus personæ, a characteristic of an ordinary partnership, is expressly excluded.

In view of these facts, we are clearly of

the opinion that, under the principles announced in the authorities above cited, the bill disclosed a mining partnership including plaintiff and defendant Fontaine. The same facts, together with the showing of advancements by plaintiff and nonpayment by Fontaine, make it apparent that plaintiff has an equitable lien on the interest of Fontaine in the lease. The lien arises by operation of law. In the Sturm Case, supra, the court said: "Where a mining partnership exists, each partner is liable to the others for his share (depending upon his interest) of the expenses and losses incurred in the enterprise and there is a lien for such upon his interest in the property or proceeds therefrom in favor of creditors or of other partners who have made advances." To the same effect are 40 C. J. p. 1151, § 807; Connolly v. Bouck, 174 F. 312, 315 (C. C. A. 8); Barrett v. Buchanan, supra; Duryea v. Burt, 28 Cal. 569.

[4, 5] It is contended by defendants that, even though a lien exists in favor of plaintiff, yet it cannot be foreclosed without a final accounting and a winding up of the affairs of the partnership. It is the general rule that an action at law involving partnership transactions cannot be maintained between partners until after an accounting and settlement. This rule, however, is by no means universal, even in ordinary partnerships. Thus, where there is an express stipulation in the partnership articles which is violated by one partner, an action at law will lie. And where the partnership agreement, as in the case at bar, provides for a periodical settlement of expenses, suit may be maintained therefor without seeking a dissolution of the partnership and a final accounting. 30 Cyc. pp. 461, 470; Rowley on Modern Law of Partnership, vol. 2, §§ 743–750; Bates on Partnership, §§ 911, 916; Miller v. Freeman, 111 Ga. 654, 36 S. E. 961, 51 L. R. A. 504; Indiahoma Refining Co. v. Wood (Tex. Civ. App.) 255 S. W. 212, 216. See, also, Denver v. Roane, 99 U. S. 355, 25 L. Ed. 476; Brew v. Cochran (C. C.) 141 F. 459; Owen v. Meroney, 136 N. C. 475, 48 S. E. 821, 103 Am. St. Rep. 952, 1 Ann. Cas. 834; Patterson v. Ware, 10 Ala. 444.

We think that, in mining partnerships, since they are not dissolved by bankruptcy or by death or by transfer of a partner's interest, and since the delectus personæ is absent, the rules in regard to actions between partners are even more liberal than in ordinary commercial partnerships. See Indiahoma Refining Co. v. Wood, supra.

It is admitted in the case at bar that plaintiff can maintain an action at law against the defendant Fontaine for the amount claimed to be due. It would seem that this admission includes the further one that a final accounting and dissolution of the partnership are not necessary. It would thus appear that the present cause of action is one upon which an action at law might be maintained, no final accounting being necessary; and it is clear that a disposal of Fontaine's interest in the lease—a partnership asset—whether voluntarily made or through legal proceedings, would not dissolve the partnership. Even if in the future development of the case an accounting is found to be necessary, a court of equity is peculiarly adapted for taking the same. But no reason appears on the face of the record, and none occurs to us, why a dissolution of the partnership should be had.

Under these circumstances, we think this suit in equity may be maintained for a determination of the amount of the debt and for the establishment and foreclosure of the lien incident to the debt, without specifically praying for a final accounting or a dissolution of the partnership. See Harris v. Young, 298 Ill. 319, 131 N. E. 670, a mining partnership case, in which liens for advances were established and foreclosed without a dissolution of the partnership. It may be noted also that the decree in the Sturm Case, supra, established advancement liens upon a mining partner's interest in a lease—a partnership asset—and directed foreclosure thereof without decreasing a dissolution of the partnership.

Although an action at law might be maintained to recover the amount claimed to be due, yet such a remedy would not be adequate, since the equitable lien existing in favor of plaintiff could not be established and foreclosed in such action, nor could priority of liens be determined. We, of course, are not undertaking to decide the merits of the controversy, nor to determine whether a lien could be established not only upon Fontaine's interest in the lease, but also upon the proceeds of the oil going to her under division orders, if such orders have been made. We simply hold that the bill discloses on its face a cause of action for equitable relief.

The decree is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.