IMWA EQUITIES IX COMPANY,
LIMITED PARTNERSHIP,
Plaintiff–Appellant,

v.

WBC ASSOCIATES LIMITED PART-
NERSHIP; James M. Wordsworth;
Harvey C. Borkin, Defendants–Appel-
lees.

No. 91–1178.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1992.

Decided April 8, 1992.

Thomas Joseph O'Brien, Morgan, Lewis & Bockius, Washington, D.C., argued (William L. Gardner, on brief), for plaintiff-appellant.

Craig Crandall Reilly, Murphy, McGettigan & West, P.C., Alexandria, Va., argued (Michael McGettigan, on brief), for defendants-appellees.

Before RUSSELL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

OPINION

DONALD RUSSELL, Circuit Judge:

Seeking compensatory damages for breach of an indemnity covenant in a partnership agreement, Appellant IMWA Equities IX Company, L.P., commenced this action April 29, 1991, in the United States District Court for the Eastern District of Virginia. Appellees WBC Associates Limited Partnership, James M. Wordsworth and Harvey C. Borkin moved to dismiss IMWA's complaint pursuant to Fed. R.Civ.P. 12(b)(6). On July 19, 1991, the district court granted the Appellees' Rule 12(b)(6) Motion to Dismiss. For reasons set forth hereinafter, we vacate and reverse.

I.

Appellant IMWA Equities IX Company, L.P. ("IMWA"), is a limited partnership organized under the laws of New Jersey. Appellee WBC Associates Limited Partnership ("WBC") is a limited partnership organized under the laws of Virginia. Appellees James M. Wordsworth and Harvey C. Borkin are the general partners of WBC.

IMWA and WBC are two of three partners of Beacon Hill Farm Associates II Limited Partnership ("Beacon Hill"), a Virginia limited partnership formed to acquire and develop a 2,000–acre tract of land in Loudoun County, Virginia. Porten Sullivan Corporation ("PSC"), a Maryland corporation, is Beacon Hill's third partner. PSC is Beacon Hill's sole general partner and is also a Beacon Hill limited partner. Each Beacon Hill limited partner holds a one-third interest in the partnership.

When Beacon Hill purchased the Loudoun County property, WBC and PSC were the only partners of Beacon Hill. However, Beacon Hill required additional financing to develop the property, and recruited IMWA as a third partner to provide additional security to Beacon Hill's lender, the United Savings Bank of Virginia. IMWA provided a $6 million irrevocable letter of credit to United Savings Bank. Using this letter of credit as collateral, Beacon Hill obtained an additional $5.5 million in loans from United Savings Bank.

Section 3.6(B) of the May 8, 1987, amended Beacon Hill partnership agreement provides,

> Any draws against the Letter of Credit in accordance with its terms shall be a loan (an "L.C. Loan") to the Partnership by IMWA. Each draw shall constitute a separate L.C. Loan.... An L.C. Loan, with all accrued but unpaid interest shall be due and payable upon the earlier to occur of (x) the dissolution of the Partnership, or (y) one (1) year from the date of draw against the Letter of Credit, prepayable without penalty.

(J.A. at 24.)

To afford IMWA some protection in the event that Beacon Hill was unable to repay the "L.C. Loans" per the agreed terms, WBC, Wordsworth and Borkin agreed to indemnify IMWA for a portion of any overdue principal and interest on L.C. Loans. Section 5.8(C) of the partnership agreement provides, "PSC and WBC, Wordsworth and Borkin shall indemnify IMWA to the extent that IMWA's then unpaid principal and interest on any L.C. Loan when due exceeds sixty percent (60%) of the face amount of the Letter of Credit at the time the L.C. Loan was made." (J.A. at 36.) In addition, section 5.8(C) of the partnership agreement provides for cross-indemnification between PSC, WBC, Wordsworth and Borkin, as follows:

> To the extent of any indemnification of IMWA by PSC and/or WBC, Wordsworth and/or Borkin as aforesaid, PSC and WBC, Wordsworth and Borkin shall, as between themselves, cross-indemnify each other so that any such indemnification of IMWA shall be borne in the following manner: fifty percent (50%) shall be borne solely by WBC, Wordsworth and Borkin, jointly and severally, and fifty percent (50%) shall be borne solely by PSC.

(J.A. at 36.)

On April 16, 1990, Beacon Hill's general partner, PSC, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. On April 23, 1990, Beacon Hill also filed a petition in Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey. United Savings Bank then demanded payment on the entire amount of IMWA's $6 million letter of credit. IMWA's bank honored United Savings Bank's demand for payment on April 23, 1990, thereby converting the $6 million letter of credit into an L.C. Loan. As a result of the filings in bankruptcy by PSC and Beacon Hill, this L.C. Loan became due and payable to IMWA under section 3.6(B) of the partnership agreement.* Beacon Hill did not repay to IMWA the $6 million amount of the L.C. Loan. Appellees WBC, Wordsworth and Borkin subsequently refused to indemnify IMWA for any portion of the L.C. Loan. IMWA brought the action in the district court, alleging that the WBC Associates Limited Partnership, and that Wordsworth and Borkin as individuals,

---

\* The Virginia Code provides in pertinent part, "Causes of dissolution. —Dissolution is caused: ... (5) By the bankruptcy of any partner or the partnership." Va.Code Ann. § 50–31(5) (Michie 1989).

were liable for indemnifying IMWA under section 5.8(C) of the partnership agreement.

## II.

The district court granted Appellees' Rule 12(b)(6) Motion to Dismiss IMWA's complaint without prejudice, stating the grounds for dismissal from the bench. The district court ruled that IMWA could not sue WBC for breach of an indemnity covenant contained in a partnership agreement, and concluded,

> I find that this is simply not a separate undertaking by a party that can be enforced absent a dissolution, winding up of the partnership.
>
> Whatever undertakings were made here are part and parcel of the partnership agreement, and part and parcel of the purpose and thrust of the initial partnership. It is not a separate agreement that came on at some later time, or a separate agreement between one partner in the partnership, or a separate agreement between partners.... And I find that until there has been an accounting, the affairs of this partnership have been wound up, that you cannot sue on these individual obligations.

(J.A. at 63–64.)

As to IMWA's contention that Wordsworth and Borkin had also undertaken in their individual capacities to indemnify IMWA according to the terms of section 5.8(C), the district court stated, "I won't express any opinion about the individual responsibilities because I just don't get to that point in this case." (J.A. at 63.) On September 6, 1991, the district court denied IMWA's Motion to Vacate Judgment pursuant to Fed.R.Civ.P. 59(e). IMWA appealed. Perceiving two principal errors in the district court's decision, we vacate and reverse.

## III.

■ The district court incorrectly assumed that an action between partners before the partnership's dissolution, winding up and final accounting is premature where the provision sued upon is "part ... of the partnership agreement" and is "not a separate agreement that came on at some later time, or a separate agreement between one partner in the partnership, or a separate agreement between partners." (*See* J.A. at 64.) We are aware of no absolute rule stating that a provision between partners must be separate from the partnership agreement in order to allow one partner to sue another, before dissolution and winding up, for breaching that provision.

The Virginia Revised Uniform Limited Partnership Act, Va.Code Ann. §§ 50–73.1 to –.77 (Michie 1989 & Michie Supp.1991), is silent on this issue. *See id.* Where the Revised Uniform Limited Partnership Act does not provide the applicable rule of law, the provisions of the Virginia Uniform Partnership Act, §§ 50–1 to –43 (Michie 1989 & Michie Supp.1991), shall govern. § 50–73.75. The Uniform Partnership Act is also silent on the issue. *See* §§ 50–1 to –43. In cases not provided for in the Virginia Uniform Partnership Act, "the rules of law and equity ... shall govern." § 50–5.

As Appellees properly note, the general common law rule states that "an action at law by one partner against his co-partners will not lie on a claim growing out of the partnership transactions until the business is wound up and the accounts finally settled." *Summerson v. Donovan,* 110 Va. 657, 66 S.E. 822, 822 (1910). But the court in *Summerson* further explained,

> In partnership transactions, a partner does not as a rule become a creditor or the debtor of a copartner, but of the firm. Such a settlement may be agreed upon by the partners without an action for an accounting; but, in order that it may form the basis of an action at law, it must show that the partners have agreed upon the sum which each owes to the other.

66 S.E. at 822.

Hence, as the Eighth Circuit subsequently observed, the general rule "is by no means universal, even in ordinary partnerships. Thus, where there is an express stipulation in the partnership articles which is violated by one partner, an action at law

will lie." *Gilbert v. Fontaine*, 22 F.2d 657, 662 (8th Cir.1927).

In *Gilbert v. Fontaine*, a mining partnership agreement provided,

the expense of the maintenance, operating ... of the said ... oil wells ... by said second parties under this contract shall be paid one-half (½) by [Fontaine] and one-half (½) by parties of the second part. The said second parties shall render monthly installments of all such costs and expenses to [Fontaine] and [Fontaine] shall thereupon ... remit their proportionate share of such expenses to parties of the second part....

22 F.2d at 659.

Relying upon the principles governing "ordinary," or non-mining, partnerships, the Eighth Circuit ruled that where "the partnership agreement, as in the case at bar, provides for a periodical settlement of expenses, suit may be maintained therefor without seeking a dissolution of the partnership and a final accounting." *Gilbert*, 22 F.2d at 662.

In light of the exception to the general rule expressed, for example, in *Gilbert v. Fontaine*, 22 F.2d 657, 662 (8th Cir.1927), the question here becomes whether the Beacon Hill partnership agreement provision at issue here constituted an "express stipulation" obligating the Appellees to indemnify IMWA in advance of any dissolution or final accounting for the partnership. *See* 22 F.2d at 662. We are of the opinion that, like the "periodical settlement of expenses" required of the partner in *Gilbert*, 22 F.2d at 662, the indemnity provision contained in the Beacon Hill partnership agreement requires the Appellees to indemnify IMWA according to section 5.8(C) of that agreement in advance of any dissolution and final accounting for Beacon Hill.

The "periodic settlement of expenses" provision at issue in *Gilbert v. Fontaine*, 22 F.2d at 662, created one partner's right to receive a proportionate share of partnership expenses from the other partner upon the occurrence of a certain event. *See id.* at 659. The language of the periodical settlement provision showed the partners had stipulated in their partnership agreement that one partner's rendering of a monthly statement of partnership expenses to the other partner would give rise to that partner's right to receive a proportionate share of the expenses from the other partner. *Id.* The partners intended that this right would mature and become enforceable each month for the duration of the partnership, and in advance of any dissolution or final accounting for the partnership. 22 F.2d at 659, 662.

Similarly, the language of section 5.8(C) shows the partners in Beacon Hill stipulated in the amended partnership agreement that the occurrence of certain circumstances would give rise to IMWA's right to indemnification. As previously noted, section 5.8(C) provides, "WBC, Wordsworth and Borkin shall indemnify IMWA to the extent that IMWA's then unpaid principal and interest on any L.C. Loan when due exceeds sixty percent (60%) of the face amount of the Letter of Credit at the time the L.C. Loan was made." (J.A. at 36.) We interpret this language to mean that, upon the happening of a specified event, *i.e.*, Beacon Hill's default on an L.C. Loan, WBC, Wordsworth and Borkin would *then* indemnify IMWA for the prescribed portion of Beacon Hill's deficiency. Accordingly, we conclude that Beacon Hill's partners agreed that IMWA's right to indemnity under section 5.8(C) of the agreement could accrue in advance of dissolution and a final accounting for the Beacon Hill partnership. We therefore reverse the district court, and rule that IMWA is entitled to judgment on this issue.

We next review the district court's dismissal of IMWA's action against Wordsworth and Borkin in their individual capacities for indemnification under section 5.8(C) of the agreement. We find the language of the partnership agreement shows that Wordsworth and Borkin undertook as individuals to indemnify IMWA as provided in section 5.8(C).

In Virginia, as elsewhere, " 'The contract is to be construed as a whole, and effect given to every provision thereof if possible. No word or paragraph can be omitted in construing·the contract if it can be retained

and a sensible construction given to the contract as a whole.' " *Ames v. American Nat'l Bank of Portsmouth,* 163 Va. 1, 176 S.E. 204, 216 (1934) (quoting *Scott v. Albemarle Horse Show Ass'n,* 128 Va. 517, 104 S.E. 842, 845 (1920)). Here, section 5.8(B) of the partnership agreement, in the paragraph immediately preceding the provisions at issue in this case, states, "The General Partner shall indemnify Wordsworth and Harvey C. Borkin ("Borkin"), each of whom is a WBC Partner, against any personal liability by virtue of their guarantees of the United Savings Bank Loan, but not against any *personal liability* by virtue of their guarantee contained in *Section 5.8(C)* hereof...." (J.A. at 36.) (emphasis added). Virginia courts adhere to the "plain meaning" rule of interpreting contracts, whereby "[c]lear and explicit language in a contract is to be taken in its ordinary signification, and, if the meaning is plain when so read, the instrument must be given effect accordingly." *Davis v. Davis,* 239 Va. 657, 391 S.E.2d 255, 257 (1990). As plainly shown by the reference in section 5.8(B) to Wordsworth's and Borkin's "personal liability by virtue of ... Section 5.8(C)," the agreement contemplates that Wordsworth and Borkin would be liable in their individual capacities for the indemnification of IMWA as described in section 5.8(C).

Furthermore, Wordsworth and Borkin are named in section 5.8(C) without reference to their status as partners of WBC. Section 5.8(C) also provides that fifty-percent of the cross-indemnification of the parties "shall be borne solely by WBC, Wordsworth and Borkin, jointly and severally." (J.A. at 36.) The individual listing of Wordsworth and Borkin in section 5.8(C) among the parties bound to indemnify IMWA, and the provision in section 5.8(C) for the several, or individual, liability of Wordsworth and Borkin are both consistent with our view that Wordsworth and Borkin undertook in their individual capacities to indemnify IMWA according to section 5.8(C). The individual liability of Wordsworth and Borkin for the indemnification of IMWA under section 5.8(C) is therefore consonant with other language contained in the partnership agreement,

and is conducive to a sensible construction of the partnership agreement as a whole.

Accordingly, we conclude that Wordsworth and Borkin agreed in their individual capacities to indemnify IMWA on the terms of section 5.8(C) as interpreted by this court in the preceding portion of this opinion.

For the foregoing reasons, the district court's decision is *VACATED AND REVERSED.*