**BRETON, LLC, Plaintiff,**

v.

**The LINCOLN NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**No. 1:10CV1309 (LMB/IDD).**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 19, 2011.

Glenn Hugh Silver, C. Thomas Brown, Silver & Brown, Fairfax, VA, for Plaintiff.

Cathy Ann Hinger, Womble Carlyle Sandridge & Rice PLLC, Washington, DC, for Defendant.

### MEMORANDUM OPINION

LEONIE M. BRINKEMA, District Judge.

Before the Court are the parties' cross-motions for summary judgment [Dkt. Nos. 51 and 54]. For the following reasons, the defendant's motion will be granted and the plaintiff's motion will be denied.

### I. Background

This civil action presents a dispute over the payment of insurance and takings proceeds, along with a claim for the recovery of attorneys' fees incurred in an earlier insurance coverage action in this District. The central dispute concerns whether the plaintiff's attorneys are entitled to recover their fees as a percentage of the insurance and takings proceeds, pursuant to various contingency fee agreements with the plaintiff, or whether the defendant is entitled to recover those insurance and takings proceeds and apply them, *inter alia*, to its own attorneys' fees.

#### A. Relevant contractual provisions

The plaintiff, Breton, LLC ("Breton"), is a Virginia limited liability company owned and controlled by Heman Ward ("Ward"), along with several other members of his family. *See* Def.'s Mot. for Summ. J., Ex. 1 (Ward Dep.) at 13:1–14:14. On July 5, 2003, Breton executed a Promissory Note, secured by a Deed of Trust, in favor of Jefferson Pilot Financial Insurance Company ("Jefferson Pilot"). *See id.* at Ex. 2 (Promissory Note). Jefferson Pilot subsequently merged with and into the defendant in this action, The Lincoln National Life Insurance Company ("Lincoln National"), effective July 2, 2007, such that Lincoln National is now the mortgagee and the holder of the Note and Deed of Trust executed by Breton. *See Breton, LLC v. Graphic Arts Mut. Ins. Co.,* No 1:09cv60, Dkt. No. 87 at Ex. 6 (Certified Certificates of Merger).

The July 5, 2003 Deed of Trust entered into by Breton encumbers five industrial

properties that Breton owns in Springfield, Virginia, and was executed as security for an $8.2 million loan to Breton. The Deed of Trust was properly recorded in the land records of the Fairfax County Circuit Court, the court with jurisdiction over the subject properties, in August 2003. *See* Def.'s Mot. for Summ. J., Ex. 3 at 43 (Deed of Trust with clerk's annotation, showing recordation on August 4, 2003).

Among other relevant provisions, the Deed of Trust assigns all insurance and condemnation proceeds to Jefferson Pilot (now Lincoln National) [1], gives Lincoln National the right to determine the manner in which such proceeds will be applied, and requires Breton to pay reasonable attorneys' fees incurred by Lincoln National relating to the Deed of Trust. *See id.* (Deed of Trust) § 1.03 (providing that "[i]n the event of loss" under an insurance policy covering the subject properties, Lincoln National "shall be entitled to receive and retain all insurance proceeds," and has the option to apply all such proceeds "upon any indebtedness secured hereby in such order as [it] may determine"); *id.* § 1.05 (stating that "[a]s further security ... [Breton] hereby assigns to LENDER [Lincoln National] all judgments, awards or damages or settlements [sic] hereafter made resulting from condemnation proceedings," and that Lincoln National has the right to "apply any [condemnation proceeds] so received after payment of all of its expenses, including costs and reasonable attorneys' fees, to the indebtedness secured hereby"); *see also id.* § 1.10 (providing that Breton "shall ... pay all expenses actually incurred, or contracted to be paid, by LENDER [Lincoln National] (including reasonable and actual fees and disbursements of counsel) incident to the

protection or enforcement of the rights of ... [Lincoln National] hereunder....").

## B. Prior insurance coverage litigation

In 2003, as a condition for the closing of the loan, Lincoln National required that Breton obtain insurance for the properties covered by the Deed of Trust, and that the insurance policy name Lincoln National as an additional insured. Through 2007, Breton had such a policy with Graphic Arts Mutual Insurance Company ("Graphic Arts"), and the policy specifically named Lincoln National's predecessor, "Jefferson–Pilot Life Ins. Co." as the mortgagee. *See* Pl.'s Mot. for Summ. J. at Ex. 6. After a fire destroyed one of the subject properties, a 37,500 square foot warehouse located at 7396 Ward Park Avenue, in December 2007, Breton filed a coverage claim with Graphic Arts, retaining the law firm of Silver & Brown, P.C. ("Silver & Brown") to assist in prosecuting that insurance claim.

The contingency fee arrangement between Breton and Silver & Brown, which was entered into in May or June 2008, provided that Breton "agrees to pay [Silver & Brown] for its services a fee of Fifteen Percent (15%) of ... [a]ny and all amounts recovered from, and/or paid by [Graphic Arts] to [Breton], or on [Breton's] behalf ('Recovered Amounts')." *See* Def.'s Mot. for Summ. J. at Ex. 5 (Contingency Fee Agreement) ¶ 2. The agreement further states:

> [Silver & Brown] shall receive, and [Breton] irrevocably assigns, that portion of the Recovered Amounts that represents the Attorneys [sic] fee, and in this regard the Recovered Amounts shall be paid to [Silver & Brown] who shall be

---

**1.** Unless otherwise indicated, Lincoln National and Jefferson Pilot will hereinafter be referred to interchangeably.

entitled to retain therefrom its percentage Attorney's fee as specified herein, and, before disbursing the remainder to [Breton] and others entitled thereto, [Silver & Brown] may deduct therefrom the amount of costs and expenses advanced. . . . [Breton] agrees that [Silver & Brown's] name shall be included on any check payable by [Graphic Arts].
*Id.* ¶ 6. Ward did not consult Lincoln National before entering into that contingency fee agreement on Breton's behalf, and Lincoln National claims that it was not aware of the agreement until after Breton filed the instant action. *See* Def.'s Mot. for Summ. J. at 6 (citing *id.*, Ex. 1 (Ward Dep.) at 137:11–15). Meanwhile, Silver & Brown contends that before executing the contingency fee agreement, it "had not reviewed" and "did not have a copy" of the 2003 Deed of Trust, and therefore was unaware that Breton had already assigned all of its rights to any insurance proceeds to Lincoln National. *See* Def.'s Mot. for Summ. J., Ex. 6 (Brown Dep.) at 134:18–135:10.

Graphic Arts originally denied Breton's insurance claim, on the ground that Breton was barred from coverage because it had failed to maintain the sprinkler system at 7396 Ward Park Avenue and impermissibly delegated its maintenance. Specifically, "[a]t some point after the denial, but before suit was filed" by Breton, counsel for Graphic Arts informed Silver & Brown that "Graphic Arts' position was that if the sprinkler failed to operate, a condition of the insurance was not met, and there was no policy coverage for either [Breton] or the mortgagee [i.e., Lincoln National]." *Id.* at Ex. 7 (Brown Aff.) ¶¶ 6–7; *see also id.*, Ex. 6 (Brown Dep.) at 141:16–145:10. Graphic Arts' counsel also subsequently communicated a similar position to lead trial counsel for Lincoln National. *See id.*, Ex. 8 (Harden Dep.) at 52:19–53:8; *see also* Exs. 9 and 10 (May 2009 letter and e-mail to that effect).

Throughout October 2008, counsel for Breton and Lincoln National exchanged a series of e-mails relating to the insurance coverage dispute. In those e-mails, counsel for Breton (Silver & Brown) initially indicated a desire to have Lincoln National join in the action as a co-plaintiff. *See id.*, Ex. 11 at LN00013623–24.[2] However, on October 13, 2008, Lincoln National, after consulting with its in-house litigation counsel, indicated that its "litigation department . . . declines to become involved in [the] dispute" with Graphic Arts. *Id.*, Ex. 12 at PRC000055. Because Silver & Brown had previously transmitted a draft complaint to a representative of Lincoln National, in which Lincoln National was named as a defendant that "may have[ ] an interest in the insurance proceeds given its status as a mortgagee under the policy," *id.*, Ex. 11 at LN00013626, 13628 (October 6, 2008 e-mail), Lincoln National reminded Breton of the attorneys' fees provisions in the underlying Deed of Trust. Specifically, in an e-mail dated October 13, 2008, and on which Ward was copied, Joe Tilley ("Tilley"), an employee of Phillips Realty Capital, which functioned as a servicer and intermediary for Lincoln National with respect to the Breton loan, stated:

> [H]ere is a response that I received from the lender on Friday. As you can see, they decline to become involved and, since they are a named defendant, remind the borrower that they will be responsible for any legal expenses that Lender incurs as a result.

---

**2.** Notably, those e-mails did not disclose that Silver & Brown believed that it had a 15% financial interest in the insurance proceeds

pursuant to its contingency fee agreement with Breton.

*Id.*, Ex. 12 at PRC0000055 (forwarding an e-mail from Sherrie R. Davis of Lincoln National, stating "Litigation ... also pointed out that as the case currently reads they have us named as a defendant and asked that I remind the borrower that if we incur legal expenses because of this lawsuit, per our mortgage with them, they will be responsible for the cost.").

Despite Lincoln National's responses to the plan to name it in the Graphic Arts lawsuit, Breton, represented by Silver & Brown, filed a complaint in this District on January 21, 2009, naming both Graphic Arts and Lincoln National as defendants. *See Breton, LLC v. Graphic Arts Mut. Ins. Co.*, No. 1:09cv60 (Trenga, J.) ("*Breton I*"), at Dkt. No. 1.[3] The complaint indicated that Lincoln National was being included as a party defendant because it may have an interest in the insurance proceeds, and it further sought a declaration of Lincoln National's rights to the insurance proceeds in the event that Breton was denied coverage. *Breton I* at Dkt. No. 1, ¶¶ 5, 54–58. However, the complaint did not seek any actual relief against Lincoln National; instead, all relief was sought purely against Graphic Arts. *See id.* ¶¶ 24–65.

In response to the *Breton I* complaint, Graphic Arts denied that it had any obligation to pay the insurance proceeds to Breton or to Lincoln National, and further asserted that Breton lacked standing to protect Lincoln National's claims to those proceeds. *See Breton I* at Dkt. No. 7 (Graphic Arts' Answer, Affirmative Defenses, and Countercl.). Lincoln National, for its part, retained the law firm of Womble Carlyle Sandridge & Rice, PLLC ("Womble Carlyle") to represent it in the *Breton I* insurance coverage action. Lincoln National claims that it did so because

it felt that it "had to hire outside counsel to protect [its] interests," and that not doing so "would be imprudent and foolish." Def.'s Mot. for Summ. J., Ex. 4 (Spearman Dep.) at 97:16–98:4, 100:3–5; *see also id.* at 125:7–126:13 (stating that with "Graphic Arts ... asserting that they weren't going to pay anybody," Lincoln National was "not going to wait to see how things turn out" before "preserving [its] rights under the deed of trust"). Lincoln National filed an Answer to the *Breton I* complaint on March 13, 2009, stating, *inter alia,* that "Plaintiff['s] Complaint fails to state any claims against Lincoln National for which relief is owed by Lincoln National to anyone." *Breton I*, Dkt. No. 14 (Lincoln National's Answer and Cross–Cl.) at 9 ("First Defense").

Lincoln National, however, also filed a cross-claim against Graphic Arts to establish its rights to recover the insurance proceeds in the event that the court were to reject Breton's coverage claim. *See id.* at 9–16. Specifically, Lincoln National's Answer and Cross–Claim included two counts against Graphic Arts: one seeking a declaratory judgment that it was entitled to payment, and the other seeking imposition of a judgment for money damages. *Id.* The second cross-claim, seeking monetary damages for breach of the insurance contract, was voluntarily dismissed without prejudice pursuant to Fed.R.Civ.P. 41(a)(2). *See id.* at Dkt. Nos. 71 and 83.

On November 10, 2009, the Honorable Anthony J. Trenga granted Breton's Motion for Summary Judgment against Graphic Arts, finding that Breton had properly established its entitlement to insurance coverage and that Graphic Arts was required to pay insurance proceeds to compensate Breton for the fire. *See id.* at

---

**3.** The complaint that was filed in *Breton I* in January 2009 is identical in material part to the draft complaint that was transmitted to

Lincoln National in October 2008. *Compare Breton I* at Dkt. No. 1, *with* Def.'s Mot. for Summ. J. at Ex. 11.

Dkt. Nos. 110 and 111. In light of that ruling, Judge Trenga denied Lincoln National's Motion for Summary Judgment on its remaining cross-claim as moot, and dismissed that cross-claim without prejudice. *Id.* On April 8, 2010, the Court then entered a final order stating that Breton is entitled to a total of approximately $4.1 million, plus interest, under its insurance policy with Graphic Arts. *Id.* at Dkt. No. 133. Graphic Arts appealed that decision; the United States Court of Appeals for the Fourth Circuit heard oral argument on the matter in May 2011, and a decision is currently pending.[4]

Lincoln National incurred approximately $340,000.00 in attorneys' fees and expenses as a result of its involvement in the *Breton I* litigation, and it claims that it is entitled to indemnification of those fees and costs by Breton under the terms of the 2003 Deed of Trust. *See* Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 26–30. Lincoln National also argues that it is entitled to recover the insurance proceeds that Breton was awarded in the litigation against Graphic Arts, and to apply those proceeds to Breton's indebtedness, including all reasonable attorneys' fees, as it chooses. *See id.* at 19–22.

On June 13, 2011, however, Silver & Brown filed a U.C.C. financing statement purporting to cover its fees for all legal services rendered in the insurance coverage action against Graphic Arts. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. at Ex. 37 (U.C.C. Financing Statement). Silver & Brown contends that that financing statement entitles it to priority over Lincoln National for the payment of its attorneys' fees out of the Graphic Arts insurance proceeds. *See, e.g., id.* at 15–19; *see also*

Mem. in Supp. of Pl.'s Mot. for Summ. J. at 29–30.

### C. VDOT "quick take" taking proceedings

While the insurance coverage action with Graphic Arts was pending, and entirely unrelated to that coverage action, Breton was notified by the Commonwealth's Commissioner of Transportation that the Virginia Department of Transportation ("VDOT") was exercising its "quick take" eminent domain rights to take a parcel of land along the perimeter of the lot on which the burned-down warehouse had been situated, to use in construction of the Fairfax County Parkway. *See* Def.'s Mot. for Summ. J. at Ex. 19. That lot was also encumbered by Lincoln National's Deed of Trust, but it appears that Breton did not promptly inform Lincoln National of the initiation of the takings proceedings involving the property. Instead, Breton once again retained Silver & Brown to handle the impending taking, and executed a second Contingency Fee Agreement with Silver & Brown in February 2009. *See id.* at Ex. 20.

That February 2009 Contingency Fee Agreement also purports to assign to Silver & Brown a portion of any condemnation proceeds, stating that Breton "agrees to pay [Silver & Brown] for its services a fee of Twenty Percent (20%) of: Any and all amounts in excess of … $473,000 … which is paid by [VDOT] (or paid on its behalf) as to the taking." *Id.* ¶ 2. The agreement further states that Breton "irrevocably assigns" 20% of any recovery in excess of $473,000 to Silver & Brown, and that "before disbursing the remainder to [Breton] and others entitled thereto, [Silver & Brown] may deduct therefrom the

---

4. Lincoln National did not appeal the dismissal of its cross-claim as moot, and that issue is therefore not before the Fourth Circuit.

amount of costs and expenses advanced." *Id.* ¶ 6. Once again, Silver & Brown claims that when entering into that fee agreement with Breton, it was unaware of the Deed of Trust that already granted Lincoln National full rights to any condemnation proceeds paid on any of the subject properties. *See* Def.'s Mot. for Summ. J., Ex. 6 (Brown Dep.) at 138:18–139:5; *see also id.* at Ex. 21.

Under Virginia law, VDOT is empowered to take land through eminent domain proceedings, *see* Va.Code Ann. §§ 33.1–89(A), 33.1–98, but before doing so, it must convey "the amount that [it] estimates to be the fair value of the land taken" to "the court wherein condemnation proceedings are pending, or are to be instituted," *id.* § 33.1–120. Accordingly, on March 30, 2009, VDOT recorded a "Certificate of Take" in the Fairfax County Circuit Court, certifying that VDOT, in accordance with an appraisal of the property and an offer to Breton, had paid $473,000 to the Fairfax County court as compensation for the proposed taking of Breton's land. *See* Def.'s Mot. for Summ. J. at Ex. 22. Breton, represented by Silver & Brown, then negotiated with VDOT to increase the compensation, and on March 18, 2010, Breton and VDOT entered into a settlement agreement increasing the amount that VDOT would pay to $540,000. *See id.* at Exs. 23 and 24. In May 2010, VDOT paid the additional $67,000 required by the settlement agreement to the Fairfax County court. *Id.* at Ex. 27. Those funds are currently being held by the Clerk of the Circuit Court of Fairfax County, pending a resolution of the instant civil action.

As of March 18, 2010, Lincoln National had still not been informed of the taking, nor had it been given an opportunity to approve or agree to the settlement. VDOT expressed concerns to Breton, Ward, and Silver & Brown that the taking could not be completed until Lincoln National agreed to the $540,000 settlement, and in May and June 2010, VDOT therefore encouraged Silver & Brown to "contact the lender [Lincoln National]" for a release. *Id.,* Ex. 25 at B0000036 (e-mails from VDOT to Silver & Brown); *see also id.,* Ex. 1 (Ward Dep.) at 85:9–86:12 (testifying that Ward "thought [Lincoln National] would have to approve" any settlement because VDOT had "stated that would be the case"); *id.,* Ex. 6 (Brown Dep.) at 35:10–16 ("I don't think there is a settlement agreement until the lender agrees."). Breton and Silver & Brown, however, did not inform Lincoln National of the taking and proposed settlement agreement until July 13, 2010. *Id.* at Ex. 24; *see also id.,* Ex. 6 (Brown Dep.) at 60:16–61:8; Ex. 1 (Ward Dep.) at 84:2–6.

Breton claims that after notifying Lincoln National of the taking, it "tendered" the condemnation funds "[i]n an attempt to resolve matters with Lincoln [National]." Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3. Specifically, Breton offered to pay all of the condemnation proceeds to Lincoln National (or, rather, to seek a distribution of the condemnation funds from the Fairfax court), on the condition that those funds would be applied to reduce the principal on the outstanding loan. *See id.* More specifically, Breton conditioned the disbursement of the condemnation funds on Lincoln National's agreement to release its lien over the condemned property and not to exercise its claimed rights under the Deed of Trust to apply the condemnation funds to its attorneys' fees. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. at 13–14.

Lincoln National, however, refused to accept the funds under those conditions, instead asserting that it was entitled to apply the condemnation funds first to the approximately $340,000 in attorneys' fees that it had allegedly incurred in the *Breton*

*I* litigation, along with any fees incurred as a result of the takings proceedings and the instant civil action. *Id.*[5] Only then would Lincoln National agree to apply the remainder of the proceeds to reduce the amount of Breton's indebtedness. *Id.*

Meanwhile, in an effort to establish priority for its alleged attorneys' fees lien, Silver & Brown included a claim for its promised portion of the condemnation proceeds in its June 13, 2011 U.C.C. Financing Statement. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. at Ex. 37. That financing statement asserts a lien on "[a]ny and all proceeds from ... or related to the taking of [Breton's] property by the Virginia Department of Transportation ('VDOT')," *id.*, and Breton once again argues that the financing statement entitles it to priority over Lincoln National for the recovery of its attorneys' fees as a percentage of the VDOT takings proceeds, *see* Pl.'s Opp. to Def.'s Mot. for Summ. J. at 15–20.

**D. This civil action**

In November 2010, Breton filed this declaratory judgment action, asserting a host of different claims. *See* Dkt. No. 3 (PL's Amend. Compl.) at 11–14 (listing various claims and seeking declaratory judgment on at least 14 different issues, enumerated on page 14 as issues (i) through (xiv)). However, it appears that no actual case or controversy currently exists as to many of those claims.[6]

The remaining live issues in this case all center in some way on the entitlement of Lincoln National and Silver & Brown to their respective attorneys' fees. *See, e.g.,* Pl.'s Amend. Compl. at 14 (claims (i), (ii), and (x)). Specifically, Breton asserts that Silver & Brown's purported attorneys' fees lien on the condemnation funds and the proceeds from the *Breton I* litigation takes precedence over, and is superior to, Lincoln National's rights to those funds, *see id.* at 14 (claims (vii) and (xiii)), while Lincoln National asserts that it has an earlier-filed and properly perfected security interest in all such proceeds, *see* Def.'s Answer & Countercl. ¶ 47(b)-(e).

The parties also dispute whether Lincoln National is entitled under the Deed of Trust to receive the insurance and condemnation proceeds and to apply them first to its reasonable attorneys' fees. *See id.* ¶ 47(a), (f)-(h). Finally, Breton argues

---

**5.** Similarly, counsel for Lincoln National asserted in several letters to Breton's counsel that when the insurance proceeds from the *Breton I* litigation were paid, Lincoln National intended to use those proceeds first to reimburse itself for its legal fees, and then either to pay down the loan or to rebuild the burned-down warehouse, at Lincoln National's discretion.

**6.** Specifically, Lincoln National's production of all bills supporting its claims to reasonable attorneys' fees, without redactions, renders moot Breton's allegation that Lincoln National "refus[ed] to produce attorneys' fee bills." *Id.* at 14 (claim (ix)). In addition, because Lincoln National is not actually seeking a "prepayment premium" after a declared "Event of Default," there is no longer any live controversy as to plaintiff's payoff and prepayment penalty claims. *See id.* (claims (iv),

(v), and (xii)); *see also* Dkt. No. 8 (Def.'s Answer and Countercl.) ¶¶ 40, 55 (admitting that "absent an Event of Default as defined in the Loan Documents, ... the amounts actually applied to principal are not subject to the prepayment premium"). Finally, it appears that Breton is no longer pursuing its claim that it "need make no further payments" on the loan "until Defendant produces the original note at its own counsel's office in Northern Virginia," *see* Pl.'s Amend. Compl. at 14 (claim (viii)), and has apparently also abandoned its argument that "the Plaintiff is not in breach of the note or deed of trust," *id.* at 14 (claim (xi)); *see also* Pl.'s Opp. to Def.'s Mot. for Summ. J. at 2 (characterizing the allegations of technical defaults by Breton under the Deed of Trust as "immaterial to any of the remaining issues in the case").

that Lincoln National "wrongfully refused" Breton's "tender" of the condemnation proceeds, and that Lincoln National is "in breach of the covenant of good faith and fair dealing under the Note and Deed of Trust." Pl.'s Amend. Compl. at 14 (claims (iii) and (vi)).

In its Motion for Summary Judgment [Dkt. No. 54], Lincoln National asks this Court to enter a declaratory judgment that Breton's claim regarding Silver & Brown's purported lien for attorneys' fees is barred as a matter of law, and that Lincoln National is entitled to receive the insurance and condemnation proceeds and to apply them as it chooses. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. at 16–25. Lincoln National also seeks a judgment declaring that it is entitled to recover its attorneys' fees relating to the underlying insurance coverage litigation in *Breton I*. *See id.* at 26–29. Breton has filed its own Motion for Summary Judgment [Dkt. No. 51], arguing that Lincoln National is not entitled to pass through to Breton the attorneys' fees and expenses in the *Breton I* litigation, and that Breton should be permitted to use the proceeds from the insurance and takings actions to first pay Silver & Brown's attorneys' fees, before remitting the remainder of the proceeds to Lincoln National. *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. at 11–23, 29–30.

This Court must therefore determine the proper construction of the attorneys' fees provisions in the 2003 Deed of Trust, as well as whether Silver & Brown's attorneys' fees lien takes priority over, or is subordinate to, any interest that Lincoln National has in the insurance and takings proceeds.[7]

## II. Standard of review

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the record in the light most favorable to the nonmoving party, and must draw all inferences in favor of that party. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir.2002). However, "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir.2008).

Resolving a civil action on motions for summary judgment is especially appropriate where, as here, the dispute centers primarily on the construction of legal documents, and not on issues of fact. *See Global Title, LLC v. St. Paul Fire & Marine Ins. Co.*, 788 F.Supp.2d 453, 457 (E.D.Va.2011) ("Resolution of the instant matter through a grant of summary judgment is especially appropriate ... because the construction of insurance contracts is a legal question well suited for resolution by the court." (omission in original) (quoting *W. Am. Ins. Co. v. Johns Bros., Inc.*, 435 F.Supp.2d 511, 513–14 (E.D.Va.2006))); *Noell Crane Sys. GmbH v. Noell Crane &*

7. Breton also raises a factual dispute regarding whether the amounts charged in legal fees by Lincoln National's counsel, Womble Carlyle, were reasonable and necessary. *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. at 24–29. That matter, however, will be resolved based upon separate briefing after the issue of the priority of any entitlements to fees is resolved.

*Serv., Inc.,* 677 F.Supp.2d 852, 869 (E.D.Va.2009) (holding that a dispute over the interpretation of contractual provisions is "particularly appropriate for a summary judgment motion").

### III. Discussion

For the reasons stated below, Lincoln National is entitled to summary judgment in its favor as a matter of law.

### A. Lincoln National is entitled to receive the insurance and condemnation proceeds and to apply them as it chooses.

 As an initial matter, the plain language of the 2003 Deed of Trust entitles Lincoln National to receive the insurance and takings proceeds and to apply them as it chooses. Virginia law requires strict adherence to the " 'plain meaning' rule of interpreting contracts, whereby clear and explicit language in a contract is to be taken in its ordinary signification." *Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.,* 446 F.Supp.2d 551, 577 (E.D.Va.2006). "[I]f the meaning is plain when so read, the instrument must be given effect accordingly." *Id.; see also Berry v. Klinger,* 225 Va. 201, 300 S.E.2d 792, 796 (1983) ("We adhere to the 'plain meaning' rule in Virginia: where an agreement is complete on its face, [and] is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself") (internal citations and quotations omitted); *Seaboard Air Line R.R. Co. v. Richmond–Petersburg Tpk. Auth.,* 202 Va. 1029, 121 S.E.2d 499, 503 (1961) ("The polestar for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used.") (quoting *Ames v. Am. Nat'l Bank,* 163 Va. 1, 176 S.E. 204, 216 (1934)).

Here, Section 1.03 of the Deed of Trust expressly and unambiguously provides: (i) that Lincoln National "shall be entitled to receive and retain all insurance proceeds" for losses under insurance policies covering the subject properties; (ii) that Breton "assigns ... all monies recoverable under each such insurance policy" to Lincoln National; and (iii) that Breton "authorizes" its insurer "to make payment for all such losses directly to [Lincoln National]." Def.'s Mot. for Summ. J., Ex. 3 § 1.03(A)-(B). Furthermore, Section 1.03 specifically gives Lincoln National the "option" to apply all such proceeds "upon any indebtedness secured hereby in such order as [it] may determine." *Id.* § 1.03(A). Taken together, these provisions plainly empower Lincoln National to receive the insurance proceeds in full and to apply them as it sees fit. *See also English v. Fischer,* 660 S.W.2d 521, 523 (Tex.1983) (holding that under the terms of a similar deed of trust, the mortgagee was entitled to collect the insurance proceeds after a fire and "to apply such proceeds to the indebtedness and pay the remainder to [the mortgagor]"); *Lee v. Murphy,* 253 Cal.App.2d 205, 209, 61 Cal.Rptr. 174 (Cal.Ct.App. 1967) (same).

 Similarly, Section 1.05 of the Deed of Trust explicitly states that Breton "assigns" to Lincoln National "all judgments, awards[,] damages or settlements hereafter made resulting from condemnation proceedings or in lieu of any taking of the Property or any part thereof under the power of eminent domain." Def.'s Mot. for Summ. J., Ex. 3 § 1.05(A). Additionally, Lincoln National has "the right ... to apply" any such condemnation proceeds first to its attorneys' fees and costs, and then to the rest of the indebtedness secured by the Deed of Trust. *Id.* Under the plain language of Section 1.05, there-

fore, Lincoln National is entitled to receive the condemnation proceeds and to apply them as it chooses.[8]

Breton's claim that Lincoln National is not entitled to the condemnation proceeds because it declined Breton's purported "tender" of those proceeds, *see* Pl.'s Amend, Compl. at 14 (claim (vi)), is without any merit. First, Breton lacks possession or control over those funds so as to properly tender them. In fact, the condemnation proceeds are currently being held in the custody of the Fairfax court, and absent Lincoln National's release of the lien in the Deed of Trust, Breton lacks standing to unilaterally petition the Fairfax court to distribute the funds. *See* Va. Code Ann. § 33.1–124(A).

Moreover, Breton conditioned its "tender" of the funds on Lincoln National agreeing to waive its rights under the Deed of Trust to apply the condemnation proceeds to its attorneys' fees. Yet Breton has offered no compelling legal or factual basis to support its assertion that Lincoln National had some duty to renounce its contractual rights in that fashion. Under the unambiguous terms of the Deed of Trust, Lincoln National is entitled to receive the VDOT takings proceeds and to apply them to Breton's debts in whatever order it desires. *See* Def.'s Mot. for Summ. J., Ex. 3 §§ 1.05(A), 1.10. Plaintiff's efforts to hold those funds hostage in an attempt to force Lincoln National to apply the funds to the principal on the outstanding loan are therefore unavailing.

■ Similarly, Breton's claim that it is entitled to a declaratory judgment that Lincoln National "is in breach of the covenant of good faith and fair dealing under the Note and Deed of Trust," Pl.'s Amend. Compl. at 14 (claim (iii)), fails as a matter of Virginia law because Lincoln National has done nothing but exercise its unambiguous rights under the loan documents. "[I]n Virginia, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Washington v. CitiMortgage, Inc.*, No. 3:10–CV–887–JAG, 2011 WL 1871228, at *8 (E.D.Va. May 16, 2011) (citing *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379, 493 S.E.2d 516, 520 (1997)). "[N]o implied duty arises with respect to activity governed by express contractual terms," *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F.Supp.2d 610, 620 (E.D.Va.2009), and as such, "a party does not breach implied duties when it exercises its rights created under [a] contract," *CitiMortgage*, 2011 WL 1871228, at *8–*9. Here, Lincoln National has done nothing more than insist on its entitlement to recover the insurance and takings proceeds, in accordance with the plain text of its Deed of Trust with Breton. Accordingly, Lincoln National is entitled to summary judgment in its favor on plaintiff's "covenant of good faith and fair dealing" claim.

---

8. Virginia law governing VDOT takings also independently supports the conclusion that Lincoln National is entitled to receive the condemnation proceeds and to do with them what it will. Under Va.Code Ann. § 33.1–120(E), VDOT's recording of a certificate of take and deposit of funds with the relevant court "terminates the interest or estate of the [property] owner" and "vests defeasible title to such property ... in the Commonwealth." Va.Code Ann. § 33.1–120(E). At such time, "all liens by a deed of trust, judgment or otherwise upon such property ... shall be transferred to the fund so paid into court." *Id.* § 25.1–240. Pursuant to the Virginia Code, the owner of property taken by VDOT, such as Breton here, therefore "has no alternative but to apply the condemnation proceeds to the debts owed [to] secured creditors in the order of their priority." *In re Wolf,* 77 B.R. 51, 57 (Bankr.E.D.Va.1987).

### B. Lincoln National has priority over Silver & Brown by virtue of its earlier-perfected Deed of Trust.

 Having determined that Lincoln National has a contractual interest in the proceeds of the insurance and condemnation proceedings, the Court must now resolve the conflict between Lincoln National's rights and those of Silver & Brown, which claims to have an interest in the exact same proceeds by virtue of its contingency fee agreements with Breton. *See* Def.'s Mot. for Summ. J. at Exs. 5 and 20 (Contingency Fee Agreements, purporting to assign to Silver & Brown a percentage of the insurance and condemnation recovery that Breton had already assigned to Lincoln National in the Deed of Trust); *see also id.,* Ex. 3 § 1.11(B) (Deed of Trust, stating that "[w]ithout the prior written consent of [Lincoln National], [Breton] shall not create or suffer to be created any other security interest in the Collateral, including replacements and additions thereto").

 Given the chronology of the events in this case, Breton's claim regarding Silver & Brown's purported attorneys' fees lien fails as a matter of law because Lincoln National's earlier-perfected security interest in the Deed of Trust takes priority over any such lien. It is uncontested that Lincoln National's Deed of Trust was recorded in 2003,[9] years before the work underlying Silver & Brown's attorneys' fees lien began in 2008. Moreover, Silver & Brown did not perfect its security interest until 2011 at the earliest, when it notified Graphic Arts of the lien in a letter and then filed a U.C.C. financing statement claiming an interest in the insurance and takings proceeds to cover the costs and fees it-was due.

As a consequence of Lincoln National's public filing of the Deed of Trust in 2003, Silver & Brown was "charged with constructive notice of the existence of th[e] deed of trust in the land records." *Centreville Car Care, Inc. v. N. Am. Mortg. Co.,* 263 Va. 339, 559 S.E.2d 870, 873 (2002). Any perfected lien by Silver & Brown is therefore inferior to Lincoln National's lien under Virginia's "first in point of time" rule, which dictates that the earliest perfected lien has priority over all later liens. *See, e.g., Puryear v. Taylor,* 53 Va. 401, 1855 WL 3478, at *5 (Va.1855) ("It is perfectly obvious that [the former creditor's] lien, being first in point of time, must take precedence . . . ."); *Kepley v. City of Richmond,* No. LB–2189–4, 1996 WL 1065657, at *1, *3 (Va.Cir.Ct. Dec. 16, 1996) (holding that "the lien securing the deed of trust on the property in question has priority over" another lien that was "established after the deed of trust lien").

Plaintiff asserts that the traditional "first in point of time" rule—a rule that

---

**9.** Breton argues that "Lincoln National did not perfect its lien against the insurance proceeds," Pl.'s Opp. to Def.'s Mot. for Summ. J. at 15, but the Deed of Trust was properly recorded in the land records of the relevant court on August 4, 2003, thereby perfecting the lien and putting the world on constructive notice of the priority of Lincoln National's claims, *see Centreville Car Care, Inc. v. N. Am. Mortg. Co.,* 263 Va. 339, 559 S.E.2d 870, 871 & n. 1 (2002). Breton attempts to confuse that basic issue by referring to errors in Lincoln National's U.C.C. financing statement, but under Virginia law, no such financing statement was required to perfect the real estate lien memorialized in the Deed of Trust. *See* Va.Code Ann. § 8.9A–109(d)(11). Furthermore, the U.C.C. does not apply where, as here, an interest in insurance proceeds was transferred. *See id.* § 8.9A–109(d)(8). The perfection of Lincoln National's security interest in those insurance proceeds therefore relates back to the perfection of its security interest in the fire-damaged property in August 2003, when the Deed of Trust was properly recorded. *See id.* § 8.9A–315(c).

has been a bedrock principle of the black-letter law governing secured transactions in Virginia for over 150 years—should give way in this case merely because a lien for attorneys' fees is involved. Breton, however, cites no controlling or persuasive authority to support that proposition.[10] Indeed, courts in other jurisdictions have overwhelmingly held that the basic rules for determining the priority of liens apply with equal force to attorneys' fees liens as to all other liens. *See, e.g., McGonigle v. Combs,* 968 F.2d 810, 829 (9th Cir.1992) (holding that in "a priority dispute between an attorney's lien and a security interest, . . . [a] perfected security interest that is prior in time is superior to a later [attorneys' fees] lien"); *Sureck v. U.S. Fid. & Guar. Co.,* 353 F.Supp. 807 (W.D.Ark. 1973) (ruling, in a case with facts strikingly similar to those in the case at bar, that a mortgagee's preexisting lien on property damaged by a fire entitled the mortgagee to recover all of the insurance proceeds obtained by a firm representing the property owner); *see also Somsen, Mueller, Lowther & Franta, PA v. Estates of Olsen,* 790 N.W.2d 194 (Minn.Ct.App.2010); *Howard, Singer & Meehan v. Clayton Fed. Sav. & Loan Ass'n,* 578 S.W.2d 56 (Mo.Ct. App.1978).

In an effort to distance itself from the compelling logic of these holdings, Breton

argues that the Court should view Silver & Brown's lien as equivalent to a mechanic's lien, claiming that its attorneys' fees lien "has priority over liens made prior in time just as a mechanic's lien has priority over a perfected antecedent deed of trust." Pl.'s Opp. to Def.'s Mot. for Summ. J. at 15. That comparison is creative, but completely unsupported by Virginia law. The Virginia Code expressly exempts mechanics' liens from the traditional "first in point of time rule," providing that:

> No lien or encumbrance upon the land created before the work was commenced or materials furnished shall operate upon the building or structure erected thereon, or materials furnished for and used in the same, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied.

Va.Code Ann. § 43–21. No comparable statutory provision exists in Virginia with respect to attorneys' fees liens; instead, plaintiff's claim of "super-priority" status for attorneys' fees liens exists solely as a product of Silver & Brown's imagination.

■ Lacking any basis in law for their argument, Breton and Silver & Brown resort to focusing on the equities of the situation, claiming that because Silver & Brown's work was instrumental in produc-

---

10. Breton cites two New Jersey cases in support of its claim that Silver & Brown's attorneys' fees lien should have priority over the insurance and takings proceeds: *Hedgebeth v. Medford,* 74 N.J. 360, 378 A.2d 226 (1977), and *First Federal Savings & Loan v. Nieder,* 163 N.J.Super. 308, 394 A.2d 896 (N.J.App. Div.1978). However, neither case has ever been cited by any court in Virginia, and *Nieder* has not been cited by any court outside of New Jersey. Furthermore, *Hedgebeth* and *Nieder* both involved facts very different from those at issue here, and neither case explicitly addressed the "first in point of time" rule for perfected security interests. *Hedgebeth* simply held that under New Jersey

law, the State's exercise of its right of subrogation against a Medicaid recipient under New Jersey's Medicaid statute "carrie[d] with it the equitable requirement of paying a *pro rata* share of counsel fees." 378 A.2d at 229. In *Nieder,* meanwhile, the attorneys' fees lien had first priority over a mortgagee's claim to the funds solely because the mortgagee's interest was based on foreclosures that occurred "during the pendency of," and therefore post-dated, the work underlying the attorneys' lien. 394 A.2d at 898. The result in *Nieder* is therefore inapposite here, where the work underlying Silver & Brown's alleged lien began long after Lincoln National's Deed of Trust was perfected.

ing both the insurance and takings proceeds, the firm should be entitled to recoup its fees from the proceeds before disbursing the remainder of the funds to Lincoln National, which has reaped a benefit from Silver & Brown's efforts. That argument has some intuitive appeal, as it certainly appears that Silver & Brown was quite successful in pursuing insurance recovery from Graphic Arts and in negotiating a higher payout from VDOT to compensate for the taking. Moreover, for the reasons explained above, Silver & Brown's efforts on both fronts will ultimately redound to the benefit of Lincoln National, which is entitled to recover both the insurance and takings proceeds. However, the equities of the situation do not alter the basic fact that as a matter of law, Lincoln National's security interest takes priority over Silver & Brown's. This Court must enforce the law as it actually stands, not as one party might wish it were drafted. As such, plaintiff's equitable arguments simply cannot overcome the "contract rights of the [mortgagee]," pursuant to which "the claim of the [mortgagee] is entitled to priority over the claim of the Firm." *Sureck*, 353 F.Supp. at 810–11.[11]

Furthermore, Silver & Brown's appeal to equity is significantly undercut by its own failure to determine whether Breton could even enter into the contingency fee agreements at issue in the first place. Silver & Brown, after all, is no unsophisticated party; it is a law firm whose attorneys are licensed to practice law in this jurisdic-

tion and therefore, by all rights, ought to have known better. Indeed, it appears that Silver & Brown *did* know better, because before representing Breton, the firm had handled other cases where its client's lender had a security interest in the property that was the subject of the insurance coverage lawsuit. *See* Def.'s Mot. for Summ. J., Ex. 6 (Brown Dep.) at 9:8–14. Silver & Brown's typical practice in those cases was to coordinate with the lender and to obtain express authority to pursue recovery on behalf of the lender, in exchange for a fee or a portion of the recovery. *Id.* at 107:10–108:20.

In deviating from that standard practice here and instead entering into various contingency fee agreements with Breton without contacting Lincoln National or consulting the underlying Deed of Trust, Silver & Brown "assume[d] the risk that its claim for compensation [would] turn out to be inferior to the claim of the mortgagee [Lincoln National] on those proceeds." *Howard, Singer & Meehan*, 578 S.W.2d at 57. That very risk has now become reality, much to Silver & Brown's understandable chagrin. Having failed to do its due diligence, however, the firm is hardly in a position to complain.

Silver & Brown may, of course, have a viable claim against Breton, which is contractually obligated to pay its attorneys' fees under the terms of the contingency fee agreements. As a matter of law, however, plaintiff is not entitled to a declarato-

---

**11.** To the extent that plaintiff asserts a claim for an attorneys' fees lien "under common law," *see* Def.'s Mot. for Summ. J. at Ex. 28 (Silver & Brown's May 19, 2011 letter to Graphic Arts, notifying Graphic Arts of a purported common law attorneys' fees lien), that claim also fails. An attorney's fee lien under the common law can exist only if the attorney possesses the property or money subject to the alleged lien, which is plainly not the case here. *See Stevens v. Sparks*, 205 Va. 128, 135 S.E.2d 140, 144 (1964) ("An attorney may have a common law possessory lien which is his right to retain the property or money belonging to his client until his fees are paid. Such a lien depends on possession.... Here, the law firm did not have possession of the funds due [ ]. Hence no such lien existed."), *superseded on other grounds. Higgins v. Bowdoin*, 238 Va. 134, 380 S.E.2d 904, 907 (1989).

ry judgment in its favor in this civil action because Silver & Brown's attorneys' fees lien on the insurance and takings proceeds is plainly inferior to Lincoln National's secured interest.

### C. Lincoln National is entitled to recover the reasonable attorneys' fees that it incurred in this civil action and the underlying insurance coverage litigation.

■ Finally, under the plain terms of the Deed of Trust, Lincoln National is entitled to recover its reasonable attorneys' fees incurred in the *Breton I* insurance coverage litigation, as well as in this civil action.

As a threshold matter, Breton does not seem to dispute that Lincoln National is entitled to recover its attorneys' fees in this civil action. Lincoln National moved for summary judgment in its favor on all of its counterclaims, one of which requests that the Court "[a]ward Lincoln National the costs and expenses incurred in this action, including attorneys' fees." Def.'s Answer & Countercl. at 34 ¶ 2. Moreover, Lincoln National's motion argues that "[u]nder the Deed of Trust, Breton is required to pay Lincoln National its reasonable attorneys' fees and costs incurred in the coverage action *and in this lawsuit*," Def.'s Mot. for Summ. J. at 4 (emphasis added), and the supporting memorandum reiterates that Lincoln National seeks summary judgment on its counterclaim for "its fees in this action," Mem. in Supp. of Def.'s Mot. for Summ. J. at 14. Breton's opposition, however, addresses only the attorneys' fees that Lincoln National incurred in the *Breton I* litigation, *see, e.g.,* Pl.'s Opp. to Def.'s Mot. for Summ. J. at 7, 12, thereby effectively conceding that Lincoln National is entitled to its reasonable attorneys' fees incurred in defending this case. The Court will therefore award those fees to Lincoln National after further briefing regarding the reasonableness of the fees claimed.

With respect to Lincoln National's fees incurred in the *Breton I* litigation, Breton has spilled a great deal of ink in an effort to convince the Court that Lincoln National is not entitled to collect those fees. The plain language of the Deed of Trust, however, states otherwise—and that is the ink that controls. Indeed, the unambiguous indemnification provisions of the Deed of Trust make clear that Breton is responsible for paying Lincoln National's attorneys' fees where, as here, those fees relate to the Deed of Trust, the covered properties, or the protection of Lincoln National's lien and security interest in those properties.

■ As explained above, Virginia law requires that all contracts be interpreted according to their "plain meaning," *Kraft Foods*, 446 F.Supp.2d at 577, and the general rules of contract construction, including that plain meaning rule, "apply in construing a contract of indemnity and in determining the rights and liabilities of the parties thereunder," *W.A.K., II ex rel. Karo v. Wachovia Bank, N.A.,* No. 3:09cv575, 2010 WL 2976518, at *2 (E.D.Va. July 19, 2010). The "plain meaning" principle also applies fully to deeds of trust, as "[e]very deed of trust to secure debts or indemnify sureties is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with the requirements of law." Va.Code Ann. § 55–59. Accordingly, under the plain meaning rule, the "clear and explicit language" in the Deed of Trust "must be given effect." *Kraft Foods*, 446 F.Supp.2d at 577.

Here, the Deed of Trust explicitly states that Breton shall indemnify Lincoln National "from and against all obligations, liabilities, losses, costs, expenses, fines,

penalties or damages *(including attorneys' fees)* which [Lincoln National] may incur by reason of this Deed of Trust or with regard to the Propert[ies] prior to the exercise of any remedies under this Deed of Trust." Def.'s Mot. for Summ. J., Ex. 3 § 4.21 (emphasis added). Furthermore, Section 1.10 of the Deed of Trust provides:

[Breton] ... shall pay all costs and expenses reasonably and actually incurred, including, without limitation, ... *actual attorneys' fees,* in any [ ] action or proceeding in which [Lincoln National] may appear.... [Breton] shall further pay all expenses actually incurred, or contracted to be paid, by [Lincoln National] *(including reasonable and actual fees and disbursements of counsel)* incident to the protection or enforcement of the rights of [Lincoln National] hereunder, and enforcement or collection of payment of the Note or any Future Advance whether by judicial or nonjudicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of [Breton], or otherwise.

*Id.* § 1.10 (emphasis added). That section also expressly makes such attorneys' fees "additional indebtedness" of Breton "secured by th[e] Deed of Trust." *Id.* Taken together, these unambiguous provisions leave no doubt that Breton is obligated to indemnify Lincoln National for its reasonable attorneys' fees incurred in *Breton I.*

In an effort to escape the logical import of the Deed of Trust's plain text, Breton mounts a valiant, but ultimately unsuccessful, campaign to rewrite that text and to effectively read the attorneys' fees provisions out of it. For example, with respect to Section 4.21, Breton invokes the "rule of the last antecedent" and asserts that "[t]he

parenthetical phrase '(including attorneys' fees)' is at best a dangling participle," and that "[s]yntactically," the phrase "modifies only 'damages,'" rather than the entire clause. Pl.'s Opp. to Def.'s Mot. for Summ. J. at 6–7; *see also United States v. Hayes,* 555 U.S. 415, 129 S.Ct. 1079, 1086, 172 L.Ed.2d 816 (2009) (explaining that under the rule of the last antecedent, "a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows"). However, the language at issue in Section 4.21 is not a limiting clause or phrase; indeed, rather than restricting or qualifying the text that precedes it, the parenthetical "(including attorneys' fees)" provides an illustrative example of the types of "obligations, liabilities, losses, costs, expenses, fines, penalties or damages" that Breton must indemnify pursuant to Section 4.21.

As such, the most natural reading of Section 4.21 is that attorneys' fees are included among the "obligations, liabilities, ... costs, [and] expenses" that Breton may be required to reimburse if they were incurred "by reason of" the Deed of Trust or "with regard to" the subject properties. Def.'s Mot. for Summ. J., Ex. 3 § 4.21. Moreover, the underlying insurance coverage action in *Breton I* clearly arose "by reason of" the Deed of Trust or "with regard to" one of the covered properties: namely, it was an insurance dispute concerning a fire-damaged warehouse that was part of one of the subject properties and that served as collateral for the loan to Breton under the Deed of Trust. Accordingly, the reasonable attorneys' fees and costs incurred by Lincoln National in the *Breton I* litigation are plainly recoverable.[12] *See also Rappold v. Ind. Lumber-*

---

**12.** Breton claims that the provisions of Section 4.21 "only apply where Lincoln National [itself] is sued and held liable." Mem. in

Supp. of Pl.'s Mot. for Summ. J. at 19. However, the indemnification provisions of Section 4.21 do not contain any such limiting

*mens Mut. Ins. Co.*, 246 Va. 10, 431 S.E.2d 302, 304–05 (1993) (holding that the words "by reason of" made the indemnification provision at issue there "just about as broad[ ] as it could be").

Furthermore, even if Section 4.21 were unclear or ambiguous in any way, Section 1.10 of the Deed of Trust dispels all remaining doubt. Section 1.10 requires Breton to "pay all expenses actually incurred, or contracted to be paid, by [Lincoln National] (including reasonable and actual fees and disbursements of counsel) incident to the protection or enforcement" of its rights under the Deed of Trust. Def.'s Mot. for Summ. J., Ex. 3 § 1.10. Breton argues that that provision is not an indemnification provision because "the word indemnity does not appear" in the text. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. at 8. That argument borders on frivolous. It is the overall meaning of the provision that controls, not a particular magic word, and a provision requiring the reimbursement of attorneys' fees—as Section 1.10 does—is an indemnification provision regardless of whether it includes the word "indemnity" or not.

Breton's next argument against the application of Section 1.10 is even weaker; in fact, accepting that argument would literally require this Court to rewrite the contract. Specifically, Breton asserts, without any supporting evidence, that Section 1.10 "contains a punctuation error" and that the "misplaced" comma between the clauses "incident to the protection or enforcement of the rights of [Lincoln National] hereunder," and "enforcement or collection of payment of the Note or any Future Advance whether by judicial or nonjudicial proceedings" should be removed, such that

the resulting attorneys' fees provision would be limited to "fee shifting in the context of matters involving title and insolvency proceedings." Pl.'s Opp. to Def.'s Mot. for Summ. J. at 8.

The central problem with that argument is that it does not reflect how the contract as drafted actually reads. Under Virginia's plain meaning rule, the Deed of Trust must be enforced as written, and the "erroneously placed" comma cannot be removed simply because one party to the document later claims that it was inserted in error. *See Kraft Foods*, 446 F.Supp.2d at 577 (quoting *IMWA Equities IX Co. v. WBC Assocs.*, 961 F.2d 480, 483–84 (4th Cir.1992)). Had Breton truly believed that Section 1.10 was unclear, misleading, or grammatically incorrect in any way, the proper time to address those deficiencies was during the drafting process, not more than eight years later in the heat of litigation. Under these circumstances, the Court must enforce the Deed of Trust's clear indemnification provision as written, comma and all, and must require Breton to pay the reasonable attorneys' fees "actually incurred" by Lincoln National "incident to the protection or enforcement of [its] rights."

Moreover, the attorneys' fees incurred by Lincoln National in the *Breton I* action were clearly incurred incident to the protection or enforcement of its rights under the Deed of Trust. Breton's complaint in *Breton I* specifically named Lincoln National as a party to the case—indeed, as a defendant. Although Breton argues that Lincoln National was only a "nominal" defendant, against whom no actual relief was sought, Count Three of the complaint specifically asserted a claim seeking a declara-

---

language; instead, the Deed of Trust simply states that Breton must indemnify Lincoln National "against all obligations, liabilities, costs, [and] expenses . . . (including attorneys' fees)" if such fees were incurred by reason of the Deed of Trust or with regard to the properties secured by the Deed of Trust. *See* Def.'s Mot. for Summ. J., Ex. 3 § 4.21.

tion of Lincoln National's rights to the insurance proceeds in the event that Breton was denied coverage. *See Breton I,* Dkt. No. 1 at 10–11 (Count III, entitled "Breach of Contract for Mortgagee/Declaratory Judgment," alleging that Graphic Arts' denial of Breton's claim "trigger[ed] [Graphic Arts'] obligation to pay the interests of [Lincoln National]"). Furthermore, in response to the complaint, Graphic Arts predictably denied that it had any obligation to pay the insurance proceeds to Lincoln National or anyone else, and further asserted that Breton lacked standing to protect Lincoln National's claimed interests in the insurance proceeds. *Id.* at Dkt. No. 7, ¶¶ 55 & 72.

Consequently, Breton's complaint put Lincoln National's rights to be a payee of the insurance proceeds directly at issue, leaving Lincoln National no choice but to retain counsel to protect its rights under the Deed of Trust.[13] In fact, had Lincoln National not participated in the *Breton I* action by filing its own answer and cross-claim, it was at risk of a judicial decision adverse to its interests, with potentially devastating preclusive effects. *See Weinberger v. Tucker,* 510 F.3d 486, 491 (4th Cir.2007) (applying collateral estoppel principles under Virginia law where, as in the Breton I coverage litigation, jurisdiction was based on diversity, and holding that where an issue was "actually litigated" and "essential to" a final judgment, "that determination remains conclusive in subsequent suits" involving the same parties).

Under these circumstances, Breton and Silver & Brown were clearly on notice that the decision to include Lincoln National as a party in the insurance litigation would result in an obligation to indemnify Lincoln National for its reasonable attorneys' fees incurred during the course of that civil action. Indeed, Lincoln National repeatedly reminded Breton of that risk throughout the proceedings. *See, e.g.,* Def.'s Mot. for Summ. J., Ex. 12 at PRC00000055 (reminding Breton "that they will be responsible for any legal expenses that [Lincoln National] incurs as a result" of the insurance litigation).

That conclusion is also fully in line with the Virginia Supreme Court's jurisprudence, which consistently enforces similar contractual provisions for the indemnification of attorneys' fees. *See, e.g., Rappold,* 431 S.E.2d at 303–05 (enforcing an indemnity agreement and requiring a subcontractor to pay a surety's attorneys' fees incurred "by reason of" having executed a performance bond and then being named as a defendant in a lawsuit by the general contractor to enforce the bond); *see also Coady v. Strategic Res., Inc.,* 258 Va. 12, 515 S.E.2d 273, 274–76 (1999) (enforcing an indemnification provision in a consulting agreement calling for the payment of all attorneys' fees and costs "caused by or arising out of, or in connection with, [the consultant's] performance or non-performance under this Agreement").

Breton attempts to distinguish such authority, arguing, *inter* alia, that Lincoln National can only recover its attorneys' fees if they "contribute[d] to the resolution of the Coverage Action." Pl.'s Opp. to Def.'s Mot. for Summ. J. at 9–10. However, as with the indemnification provision in *Coady,* "nothing in the language" of Section 1.10 and the other attorneys' fees clauses in the Deed of Trust "hinges the allowance of attorneys' fees and costs upon

---

**13.** Given the obvious conflict of interest created by Silver & Brown's claim to the exact same insurance proceeds that Breton had previously assigned to Lincoln National, Silver & Brown could not have served as counsel for both Breton and Lincoln National in *Breton I. See* Va. Rules of Prof'l Conduct § 1.7(a).

a determination [of whether the indemnitee] was the prevailing party or not … or was given a final judgment," let alone on whether the fees "contributed" to a favorable resolution of the action. Instead, as a matter of law, Lincoln National's participation in the insurance coverage action was "incident to" protecting its rights under the Deed of Trust, and under the governing contractual language, Lincoln National is therefore entitled to recover its reasonable attorneys' fees. This case truly is as simple as that.

■■■■ Finally, Breton argues that Lincoln National is "barred" from enforcing its contractual rights to attorneys' fees because that issue "was a compulsory counterclaim" in the underlying insurance action, and Lincoln National failed to assert such a counterclaim in Breton I. *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. at 20–21 & n. 5. That argument fails for a number of independent reasons. First, and most importantly, Lincoln National's right to attorneys' fees does not satisfy the Fourth Circuit's test for determining whether a counterclaim is compulsory under Fed.R.Civ.P. 13(a). That test requires a consideration of four factors: (1) whether "the issues of fact and law" raised by the claim and the counterclaim are "largely the same"; (2) whether *res judicata* would "bar a subsequent suit on the … counterclaim"; (3) whether "substantially the same evidence" supports or refutes both the claim and the counterclaim; and (4) whether any "logical relationship" exists between the claim and the counterclaim. *Painter v. Harvey,* 863 F.2d 329, 331 (4th Cir.1988). "The common thread that must weave its way through all four factors is 'evidentiary similarity' between the evidence necessary to prove the claim and evidence necessary to prove the counterclaim." *Varnell, Struck & Assocs., Inc. v. Lowe's Cos.,* Nos. 5:06cv68 & 5:07cv104,

2008 WL 1820830, at *6 (W.D.N.C. Apr. 21, 2008).

Here, only the fourth factor of that test is met; there is arguably some "logical relationship" between the insurance coverage action and the instant attorneys' fees dispute, but that is where the similarities begin and end. The issues raised by the two civil actions are not even remotely congruous: *Breton I* involved a complicated factual dispute over whether Breton had failed to maintain its automatic sprinkler system, thereby contributing to the warehouse fire. The central contract at issue there was the insurance agreement between Breton and Graphic Arts. This case, by contrast, involves a primarily legal dispute regarding how to interpret the attorneys' fees provisions of the Deed of Trust executed by Breton and Lincoln National. The causes of action in this case and *Breton I* thus do not "arise out of the same transaction … or the same core of operative facts," and *res judicata* would therefore not apply. *Pueschel v. United States,* 369 F.3d 345, 355 (4th Cir.2004). Moreover, the evidence required to resolve the issues in *Breton I*—which consisted primarily of the language of the Graphic Arts insurance policy, along with testimony from fact and expert witnesses regarding how the particular type of sprinkler system at issue should have been maintained—has no bearing whatsoever on the factual and legal disputes involved here.

Lincoln National therefore had no obligation under Fed.R.Civ.P. 13(a) to assert its entitlement to attorneys' fees as a counterclaim in *Breton I. See Allstate Ins. Co. v. Valdez,* 29 F.R.D. 479, 480 (E.D.Mich. 1962) (holding that an insured's claim for attorneys' fees incurred in defending a coverage action was not a compulsory counterclaim because "[t]he facts [and] law relative to the accident and its coverage under the policy are not relevant, let alone

decisive, in deciding whether [the insured] has a right to attorneys' fees or expenses"). Furthermore, Breton has cited no controlling authority to support its theory that every pre-existing contractual right relating, however tangentially, to a lawsuit is somehow "waived" under Fed. R.Civ.P. 13(a) unless the right is asserted in the lawsuit. *Cf. McKinley Ctr. Assocs. v. Conn. Mut. Life Ins. Co.*, No. HAR–89–2865, 1990 WL 52973, at *3 (D.Md. Apr. 25, 1990) (ruling that the mere fact that there was "some logical relationship between the two suits" was insufficient to render the later-filed suit a "compulsory counterclaim to the action previously filed").

Indeed, Breton previously *agreed* during the *Breton I* litigation that the issue of Lincoln National's attorneys' fees should be litigated separately, stating "[We] agree that disputes about the issue[ ] of attorneys['] fees should be resolved outside this litigation which is focused on the insurance coverage." Def.'s Mot. for Summ. J. at Ex. 18 (e-mail from C. Thomas Brown, of Silver & Brown, on behalf of Breton). Having represented to Lincoln National that it supported deferring resolution of Lincoln National's claim for attorneys' fees, Breton is estopped from now arguing that that same claim is barred under Fed. R.Civ.P. 13(a).

Ultimately, Breton simply cannot dispute that Lincoln National is entitled to recover its reasonable attorneys' fees incurred in this civil action and in *Breton I*. Breton is therefore wrong to suggest that Lincoln National cannot recover *any* of its fees unless it shows that *all* of them were necessary and reasonable. *See* Pl.'s Mot.

for Summ. J. at 24.[14] Moreover, Breton's arguments regarding the proper amount of Lincoln National's attorneys' fees, *see* Pl.'s Mot. for Summ. J. at 26–28, are premature at this point, as those factual disputes must be resolved after further briefing and the submission of additional materials, including Womble Carlyle's billing records, *see* Def.'s Opp. to Pl.'s Mot. for Summ. J., Ex. 2 (June 16, 2011 Final Pretrial Tr.) at 13:18–14:5, 16:10–22 (stating that if the Court determines that Lincoln National is entitled to collect its fees, the matter of the reasonableness of those fees will be resolved after another round of briefing).

To be sure, Breton may very well be able to demonstrate that some of Lincoln National's fees were unnecessary under the circumstances, and if Lincoln National fails to carry its burden to prove the reasonableness of its claimed fees, this Court will not hesitate to reduce them accordingly. For present purposes, however, the only issue in dispute is the legal question of whether Breton is required to indemnify Lincoln National for its attorneys' fees in this case and in *Breton I*. For all of the reasons previously explained, the answer is clearly yes.

### IV. Conclusion

For all of these reasons, Lincoln National's Motion for Summary Judgment [Dkt. No. 54] will be granted and Breton's Motion for Summary Judgment [Dkt. No. 51] will be denied by an Order to be issued with this Memorandum Opinion.

---

**14.** Breton's citations to cases like *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 499 S.E.2d 829 (1998), *Ulloa v. QSP, Inc.*, 271 Va. 72, 624 S.E.2d 43 (Va.2006), and *Westwind Acquisition Co. v. Universal Weather & Aviation, Inc.*, 668 F.Supp.2d 749 (E.D.Va.2009), are therefore inapposite, because the cited por-

tions of those cases all dealt with the *amount* of reasonable fees that the party was entitled to recover, while the instant dispute simply concerns the threshold question of whether Lincoln National is entitled to recover its reasonable attorneys' fees and costs at all.